COMMONWEALTH *vs.* STEVEN PROPHETE.

Middlesex. January 3, 2005. - March 1, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure. *Search and Seizure,* Probable cause, Bodily intrusion, Body examination, Search incident to lawful arrest. *Probable Cause.*

Police officers properly seized cocaine and marijuana during a search of a criminal defendant's person when the drugs fell to the ground after the defendant complied with an order by the police to remove his pants, where the officers were justified in conducting the search incident to the defendant's lawful arrest for possession of marijuana, and where the scope of the search was justified by the officers' reasonable belief, amounting to probable cause, that the defendant was concealing drugs on his person or clothing that would not otherwise be discovered. [551-557]

INDICTMENTS found and returned in the Superior Court Department on January 24, 2002.

A pretrial motion to suppress evidence was heard by *Geraldine S. Hines,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the matter from the Appeals Court.

*David W. Cunis,* Assistant District Attorney, for the Commonwealth.

*Thomas J. Freda (Charles F. Jordan* with him) for the defendant.

GREANEY, J. The Commonwealth appeals from an order entered in the Superior Court suppressing cocaine and marijuana seized by the police during a search of the defendant's person. The drugs fell to the ground when the defendant complied with an order by the police to remove his pants. After an evidentiary hearing, the judge entered a memorandum of decision and order

in which she ruled that the drugs must be suppressed because the officers lacked probable cause to conduct a strip search of the defendant. A single justice of this court granted the Commonwealth leave to pursue an interlocutory appeal from the judge's order, see Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), and we transferred the appeal from the Appeals Court on our own motion. For reasons that follow, we now vacate the order suppressing the Commonwealth's evidence.

1. The judge's findings of fact, supplemented in some respects by uncontradicted testimony (consistent with the findings), disclose the following.[1] On July 13, 2001, Detective Michael McGrath and Inspector Daniel Rego of the Somerville police department narcotics unit were conducting general surveillance from an unmarked automobile near the intersection of Main Street and Edgar Avenue in Somerville. A third detective was working nearby in another unmarked automobile. Detective Mc-Grath's attention was drawn to a vehicle driving down Main Street when its occupants beeped the horn to signal a female pedestrian. The vehicle pulled around a corner and stopped on Edgar Avenue. The pedestrian approached the vehicle and shared what appeared to be a marijuana cigarette with the vehicle's two male occupants. (The driver later was identified as Dell Wilnier, and the passenger was identified as the defendant.) Detective McGrath approached the vehicle on foot and, from a distance of approximately fifteen feet, could smell the characteristic odor of burning marijuana emanating from the vehicle. After a brief period of time, the woman walked away, and the vehicle departed.

Detective McGrath returned to his automobile and, with Inspector Rego, trailed the vehicle down Edgar Avenue, around several side streets, and onto Mystic Avenue. Pulling alongside the vehicle, the detectives (who were dressed in civilian clothing) observed Wilnier and the defendant still passing back and forth what the officers believed to be a burning marijuana

---

[1] Although the judge's findings are binding in the absence of clear error, her conclusions of law are open to reexamination by this court. See *Commonwealth v. Alvarado*, 420 Mass. 542, 544 (1995).

cigarette. The detectives displayed their police badges and ordered the men to pull over to the side of the road. The men continued driving. When the vehicle stopped at a red traffic light, Detective McGrath and Inspector Rego got out of their car and approached the vehicle, again identifying themselves as police officers. The vehicle accelerated through the red light. The detectives returned to their cruiser and, overtaking the vehicle a short distance down the road, stopped it and ordered the two men to get out.

Both men were placed in handcuffs. Although the defendant initially identified himself as Roger Coleman (and showed a temporary driver's license depicting what appeared to be the defendant's photograph with the information of a Roger Coleman), Detective McGrath, based on a previous narcotics arrest, knew his true identity to be Steven Prophete. The men denied having had any earlier interaction with a female. Wilner told the detectives that they had only been "smoking a blunt" and that they had "no more contraband on their person." The men were advised, and indicated their understanding, of their Miranda rights and were searched, one at a time, beginning with Wilnier. In a large plastic bag tucked into Wilnier's waistband, the detectives found a smaller bag containing marijuana and nine small bags of cocaine. The detectives also recovered from Wilnier a cellular telephone, a pager, and $218 in cash.

The detectives then began a pat-down search of the defendant (whose handcuffs had been removed). From the front pockets of the defendant's pants, the detectives recovered a cellular telephone, a pager, and $72 in cash. When the detectives searched the defendant's waist, the defendant used his hands to guard or protect the area around his groin from the detectives' probing. Despite what the judge termed "a comprehensive search of the [d]efendant's clothing," which included patting down his outer garments and reaching into his pockets and his clothing, no drugs were recovered from the defendant's person at this time.

The detectives then decided to call for a windowless transport van used by the Somerville police department for the purpose

of conducting strip searches.[2] Pursuant to a written policy of the department, which is not challenged here,[3] the detectives sought and received permission from a superior officer to put the defendant in the van and to strip search him. When the van arrived at the scene, the defendant was ordered inside and the detectives told him to remove one article of clothing at a time. The defendant obliged by removing his shirt, his shoes, and his socks. As the defendant removed his pants, a plastic bag fell to the floor. Inside the bag was a smaller bag of marijuana and eight small bags of cocaine. The defendant (who was in his underwear) then got dressed, was again handcuffed, and placed under arrest.

A grand jury indicted the defendant for trafficking in a controlled substance (fourteen grams or more, but less than twenty-eight grams, of cocaine), G. L. c. 94C, § 32E (b) (1); distribution of a controlled substance (cocaine) as a subsequent offense, G. L. c. 34C, § 32A (c) and (d); and possession of a controlled substance (marijuana), G. L. c. 94C, § 34. In his motion to suppress, the defendant argued that the cocaine and marijuana were seized as a result of an unlawful arrest and also as a result of an illegal strip search. The judge allowed the motion based on her reasoning that, while the officers had probable cause to arrest the defendant for possession of marijuana, the strip search of the defendant exceeded the permissible scope of a search incident to an arrest. The judge concluded that, because the police lacked probable cause to believe that the defendant carried concealed drugs on his person, the evidence recovered during the strip search was inadmissible.

2. The Commonwealth claims that the judge committed error, arguing that the search of the defendant was permissible as a search incident to a lawful arrest and, moreover, that the scope of the search was justified by the officers' reasonable belief, amounting to probable cause, that the defendant was concealing

---

[2]The Somerville police department has no adequate facility for strip-searching suspects at the station house and so relies on a windowless transport van for such searches.

[3]The written policy of the Somerville police department limits permissible strip searches to circumstances in which officers have probable cause to believe that an "arrestee is concealing contraband or weapons on their person."

drugs. The Commonwealth also asserts that the search of the defendant did not constitute a "strip search" because the defendant was not commanded to remove his underwear. We agree with both contentions.

Once a custodial arrest occurs, as did here, no additional justification is required for a search of the person for weapons that otherwise might be used to resist arrest or to escape, or to discover evidence of the crime for which the arrest was made. See *Chimel* v. *California*, 395 U.S. 752, 762-763 (1969); *Commonwealth* v. *Clermy*, 421 Mass. 325, 330 (1995); *Commonwealth* v. *Santiago*, 410 Mass. 737, 743 (1991). See also *United States* v. *Robinson*, 414 U.S. 218, 225 (1973) ("no doubt has been expressed as to the unqualified authority of the arresting authority to search the person of the arrestee"); 3 W.R. LaFave, Search and Seizure § 5.2, at 96 (4th ed. 2004) (full search of the person incident to lawful arrest per se reasonable under protections of Fourth Amendment to United States Constitution). Our Legislature has circumscribed the permissible bounds of a search after a lawful arrest in G. L. c. 276, § 1, set forth below,[4] which expressly authorizes such a search only when conducted for purposes of (1) seizing evidence of the crime for which the arrest has been made in order to prevent its destruction or concealment or (2) removing any weapon that might be used to resist arrest or to escape. See *Commonwealth* v. *Blevines*, 438 Mass. 604, 607 (2003). The defendant concedes, for purposes of this appeal, that the police officers had probable cause to arrest him for possession of marijuana and, quite correctly, makes no claim that the officers were not justified in conducting a search of his person for concealed marijuana

---

[4]General Laws c. 276, § 1, provides in relevant part:

"A search conducted incident to an arrest may be made *only* for the purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized as a result of a search in violation of the provisions of this paragraph shall not be admissible in evidence in criminal proceedings." (Emphasis added.)

incident to that arrest. The fact that the defendant was searched prior to being placed under arrest does not render the search unreasonable, "as long as probable cause [to arrest] existed independent of the results of the search." *Commonwealth* v. *Santiago, supra* at 742, quoting *Commonwealth* v. *Brillante,* 399 Mass. 152, 154-155 n.5 (1987). See *Commonwealth* v. *Alvarado,* 420 Mass. 542, 551 (1995); *Commonwealth* v. *Johnson,* 413 Mass. 598, 602 (1992).

The defendant claims, however, and the judge agreed, that the search of his person was a strip search that went beyond the permissible bounds of a search incident to arrest. As we recognized in *Commonwealth* v. *Thomas,* 429 Mass. 403, 408-409 & n.5 (1999), strip or visual body cavity searches, by their very nature, are humiliating, demeaning, and terrifying experiences that, without question, constitute a substantial intrusion on one's personal privacy rights protected under the Fourth Amendment and art. 14 of the Massachusetts Declaration of Rights. We also acknowledged, however, that such searches are, in some cases, necessary to serve legitimate ends of law enforcement, see *id.* at 409 n.5, and concluded that probable cause is the appropriate standard that must be met for a strip or visual body cavity search to be constitutionally permissible. See *id.* at 407-408. In so concluding, we rejected the reasoning of a line of cases interpreting the holding of the United States Supreme Court's decision of *Bell* v. *Wolfish,* 441 U.S. 520, 559 (1979), that routine visual cavity searches of inmates and pretrial detainees could be conducted on something less than probable cause, to require only a reasonable suspicion before conducting a strip or visual body cavity search. See *Commonwealth* v. *Thomas, supra* at 407, and cases cited.[5]

As we have indicated, the police officers had probable cause to arrest the defendant for possession of marijuana and, thus, as a matter of constitutional and statutory law, were entitled to perform a search of the defendant's body for evidence or

_____

[5]We just as soundly rejected the proposition that a visual body cavity search requires the heightened probable cause standard described in *Rodriques* v. *Furtado,* 410 Mass. 878, 888 (1991), as "a strong showing of particularized need supported by a high degree of probable cause" needed to justify a manual body cavity search. See *Commonwealth* v. *Thomas,* 429 Mass. 403, 408 (1999).

weapons as incident to that arrest.[6] Implicit in the *Thomas* decision, however, is the principle that such searches may be unconstitutional notwithstanding the lawful arrest, because they involve inspections of such a highly personal nature, or are conducted in such a manner, as to constitute an unreasonable intrusion on an individual's privacy. Accordingly, the search of the defendant lawfully could progressively extend into a strip (or a visual body cavity) search only if such a search was justified by probable cause to believe that the defendant had concealed marijuana on his person or his clothing that would not otherwise be discovered by the usual search incident to arrest.

We now articulate the facts known to the officers at the time. The defendant had been observed smoking what Detective Mc-Grath believed, based on his training and experience as a narcotics detective, to be marijuana, and Wilnier had confirmed the accuracy of that belief. Wilnier and the defendant twice refused to stop for police. Both men likely anticipated being arrested and, thus, had a motive to hide drugs securely underneath their clothing.[7] The police knew that Wilnier had, in fact, done so. The police also knew that the defendant had previously been arrested for drug activity. The defendant gave the police a false name and a false driver's license. In these circumstances, the fact that a thorough pat-down search of the defendant revealed only cash, a cellular telephone and a pager would have done nothing to dispel the officers' suspicions that the defendant also had marijuana concealed on his person. The strength of these suspicions would have intensified when the defendant, twice, used his hands to protect the area around his groin during the

---

[6]Although Detective McGrath testified that he was not searching the defendant for weapons, the circumstances, viewed from an objective standpoint, might have warranted him to do so. "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." *Commonwealth* v. *Thomas, supra* at 409, quoting *United States* v. *Robinson*, 414 U.S. 218, 234 (1973).

[7]Although not included in the judge's findings, Detective McGrath testified that a search of the vehicle in which Wilnier and the defendant had been observed smoking marijuana turned up nothing.

officers' initial pat-down search.[8] See *Commonwealth* v. *Concepcion*, 10 Mass. App. Ct. 613, 616 n.2 (1980) ("A lunge or other furtive gesture is usually insufficient, by itself, to render a search reasonable. . . . Such a movement, however, is relevant in determining whether there is probable cause"). We conclude that the facts known to the officers at the time they requested, and received, authorization to conduct a strip search of the defendant, were sufficient to justify their intention to conduct such a search. See *Commonwealth* v. *Bruno*, 432 Mass. 489, 510 (2000); *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). See also *Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990), quoting *Draper* v. *United States*, 358 U.S. 307, 313 (1959) ("[P]robable cause . . . deal[s] with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act").[9]

Whatever the officers' intentions, however, it is plain that their search of the defendant never evolved into a true strip search as that term was understood in the *Thomas* case.[10] In that case the searching officers forced the defendant to remove his

---

[8]Detective McGrath testified repeatedly that the defendant, as the officers patted him down, used his hands to guard or protect the front of his body near or below his waist. Contrary to the judge's finding, there was nothing vague or ambiguous about the testimony.

[9]The United States Court of Appeals for the First Circuit recently addressed the lawfulness of a strip search conducted on facts fairly similar to these and concluded that "police officers had excellent reason to believe that" [the defendant] might be in possession of both weapons and narcotics." *United States* v. *Cofield*, 391 F.3d 334, 336 (1st Cir. 2004). Although that conclusion was reached under the standard set forth in *Bell* v. *Wolfish*, 441 U.S. 520, 559 (1979), "whether the circumstances reasonably jusf[ied] such an intrusive invasion of privacy," *United States* v. *Cofield, supra*, we find additional support for our conclusion that the higher standard of *Commonwealth* v. *Thomas, supra*, was met in this case in the *Cofield* court's conviction that a reviewing court should consider the nature of the offense in which a suspect is believed to be involved. See *United States* v. *Cofield, supra* at 337-338, citing *Roberts* v. *State*, 239 F.3d 107, 112 (1st Cir. 2001); *Miller* v. *Kennebec County*, 219 F.3d 8, 12 (1st Cir. 2000). We note that controlled substances may be packaged and concealed on the body so as to be virtually undetectable during the manual probing of the outerwear of a fully clothed person.

[10]The defendant urges us to invoke the principle of judicial estoppel and declare that the position taken by the Commonwealth at the suppression hearing with respect to the search (namely, that it was a strip search supported by probable cause) now bars it from claiming on appeal that no strip search ever

pants and his underpants and, once the defendant retrieved cocaine from his buttocks area, ordered him to bend over so that they could conduct a visual body cavity examination. Although we did not provide an express definition of a strip search in the *Thomas* case, we noted that "[a] strip search generally refers to an inspection of a naked individual, without any scrutiny of his body cavities. A visual body cavity search extends to a visual inspection of the anal and genital areas." *Id.* at 407 n.4, citing *Cookish* v. *Powell*, 945 F.2d 441, 444-445 n.5 (1st Cir. 1991). The Appeals Court provided a correct and useful characterization of a strip search in *Commonwealth* v. *Ramirez*, 56 Mass. App. Ct. 317 (2002), when it stated that under the *Thomas* rule: "before police may command removal of an arrested person's last layer of clothing, they must have probable cause to believe - i.e., 'the facts and circumstances within the[ir] knowledge . . . [must be] enough to warrant a prudent person in believing,' *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), quoting from *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980) — that they will find a weapon, contraband, or the fruits or instrumentalities of criminal activity that they could not reasonably expect to discover without forcing the arrested person to discard all of his or her clothing." *Id.* at 323, citing *State* v. *Bush*, 65 Ohio App. 3d 560, 563-564 (1989); and *Hughes* v.

---

took place. We decline to do so. The principle of judicial estoppel, which we have described as one which in which "[a] party who has successfully maintained a certain position at a trial cannot in a subsequent trial between the same parties be permitted to assume a position relative to the same subject that is directly contrary to that taken at the first trial," *East Cambridge Sav. Bank* v. *Wheeler*, 422 Mass. 621, 623 (1996), quoting *Gordon* v. *Lewitsky*, 333 Mass. 379, 381 (1955), does not apply to the circumstances here. The defendant asserted in his motion's supporting affidavit that "my clothing was removed including my underwear." The Commonwealth responded in its memorandum in opposition to the defendant's motion with the assertion that "the defendant was never ordered to remove his underpants." The judge's factual findings implicitly confirm the Commonwealth's position that the defendant was clothed in his underwear when the search came to an end. The determination that no strip search occurred is a legal conclusion and ours to make. See *Commonwealth* v. *Jung*, 420 Mass. 675, 681 (1995); *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 384, cert. denied, 515 U.S. 1146 (1995). See also *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 106 n.9 (1997) ("the Commonwealth's concession of a legal point during the motion to suppress hearing can legitimately be ignored on appeal").

*Commonwealth,* 31 Va. App. 447, 460-461 (2000). We approve of the Appeals Court's interpretation of *Thomas* and now adopt its implicit definition of a strip search as one in which a detainee is commanded to remove the last layer of his or her clothing. Here, the defendant was ordered to remove his shirt, his shoes, his socks, and his pants. In the last analysis, however, he was not told to remove the last layer of his clothing, and, thus, he was not subjected to a strip search.

By all accounts, this search was conducted in a professional manner and in such a way as to minimize the concerns expressed by the *Thomas* court. See *Commonwealth* v. *Thomas, supra* at 408-409 & n.5. It was initiated in accordance with a written police policy setting forth the appropriate procedure and justification for initiating a strip search. The windowless van preserved the defendant's privacy, and the officers conducting the search were of the same sex as the defendant. There is no claim that the officers were verbally abusive, and the search involved no physical contact. There is nothing in the record to suggest, and the defendant makes no claim, that the officers' search was a pretext to uncover something other than concealed marijuana. That the search uncovered cocaine as well as marijuana renders neither the search unlawful nor the evidence inadmissible. See *Commonwealth* v. *Johnson,* 413 Mass. 598, 602-603 & n.5 (1992). We emphasize the existence of probable cause to justify a reasonable police belief that the defendant had controlled substances secreted on his person (warranting a more expansive search than the pat-down and emptying pockets involved in the usual search incident to arrest). We conclude, therefore, that nothing in the sequence of events takes this search outside the permissible limits of a search incident to an arrest.

3. The order allowing the motion to suppress the drugs seized during the search of the defendant in the transport van is vacated, and a new order is to enter denying the defendant's motion to suppress. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*