COMMONWEALTH *vs.* CARLOS MORALES.

Middlesex. February 9, 2012. - May 29, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Controlled Substances. Search and Seizure,* Search incident to lawful arrest,
Body examination. *Constitutional Law,* Search and seizure.

A Superior Court judge properly granted a criminal defendant's pretrial mo-
tion to suppress drugs seized from between the defendant's buttocks,
where, assuming that police officers had probable cause to arrest the
defendant for possession of drugs following a lawful automobile stop and
that the search for concealed drugs incident to that arrest was justified, one
officer's action of lifting back the defendant's waistband to retrieve the
drugs from between his buttocks, and publicly exposing the defendant's
buttocks while doing so, constituted a strip search that was not conducted
reasonably either in location or manner, in that the strip search was not
conducted in a private room or in a private location and no exigency
existed. [339-344] CORDY, J., concurring, with whom GANTS, J., joined.

INDICTMENTS found and returned in the Superior Court Depart-
ment on March 11, 2010.

A pretrial motion to suppress evidence was heard by *Paul A.
Chernoff,* J.

An application for leave to prosecute an interlocutory appeal
was allowed by *Ireland,* J., in the Supreme Judicial Court for
the county of Suffolk, and the appeal was reported by him to
the Appeals Court. The Supreme Judicial Court on its own
initiative transferred the matter from the Appeals Court.

*Melissa Weisgold Johnsen,* Assistant District Attorney, for the
Commonwealth.

*Peter M. Onek,* Committee for Public Counsel Services, for
the defendant.

IRELAND, C.J. The Commonwealth appeals from an order
entered in the Superior Court suppressing drugs seized from
between the defendant's buttocks pursuant to a search incident
to his arrest following a lawful automobile stop. During the

search of the defendant, who was lying face down on a sidewalk and whose arms were handcuffed behind his back, the defendant's buttocks were exposed to public view. After an evidentiary hearing, the judge entered a memorandum of decision and order in which he ordered that the drugs be suppressed because, in the course of the search incident to his arrest, the defendant was subjected to a "strip search" that was unreasonably conducted in violation of both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. A single justice of this court granted the Commonwealth leave to pursue an interlocutory appeal from the judge's order in the Appeals Court. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). We transferred the appeal here on our own motion. Because we conclude that the search of the defendant that took place when the police retrieved drugs from between his buttocks constituted an unreasonable strip search on account of the location of the search and the manner in which it was conducted, we affirm the suppression order.

1. *Background.* In reviewing a decision on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott,* 440 Mass. 642, 646 (2004), quoting *Commonwealth* v. *Jimenez,* 438 Mass. 213, 218 (2002). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Bostock,* 450 Mass. 616, 619 (2008), quoting *Commonwealth* v. *Mercado,* 422 Mass. 367, 369 (1996).

We summarize the judge's findings of fact, supplemented by uncontested testimony adduced at the evidentiary hearing. See *Commonwealth* v. *Garcia,* 443 Mass. 824, 828 (2005). See also *Commonwealth* v. *Isaiah I.,* 448 Mass. 334, 337 (2007) (we "supplement a judge's finding of facts if the evidence is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony"). In early November, 2009, Detective Daniel Desmarais, a trained narcotics officer with the special investigations unit of the Lowell police department, was in regular contact with a confidential informant (CI) whom he described as having been reliable in the past. The CI

informed him that the defendant, a Hispanic male known to the CI as "Carlos," whom he described in height, weight, and hair style, and who lived at 189 Walker Street in Lowell, was selling "street-level amounts of heroin" out of a tan Ford Explorer sport utility vehicle. The CI indicated that "over the last month" he had purchased heroin from the defendant about "five times a week" and that the defendant obtained his drugs from someone who resided at 22 Fetherston Avenue in Lowell. The CI, in the presence of Detective Desmarais, once attempted by cellular telephone to arrange a controlled purchase from the defendant, who informed him that he (the defendant) did not have any drugs to sell at that time, but would have some later that evening (the controlled purchase did not materialize).

At various times during early November, Detective Desmarais observed the tan Explorer parked in the common parking lot of the apartment building at 189 Walker Street, and on one occasion saw the defendant enter the vehicle and leave. Detective Desmarais checked the registration plate of the Explorer and learned that it was registered to an individual (not the defendant) who resided at 189 Walker Street. Additionally, Detective Desmarais confirmed that the defendant's driver's license indicated 189 Walker Street as his residential address.

At about 1:20 P.M., on November 12, 2009, Detective Desmarais, who was in plain clothes and driving an unmarked vehicle, saw the defendant drive by in the Explorer. He followed the defendant and then passed surveillance off to a Detective Lavoie, who simultaneously was conducting a drug investigation connected to the Fetherston Avenue location. Detective Lavoie reported to Detective Desmarais that the defendant had pulled into the driveway at 22 Fetherston Avenue and appeared to make a cellular telephone call while inside the vehicle. Minutes later a woman came out of the residence and went over to the Explorer. After a brief conversation, the two went inside. About four to six minutes later, the defendant emerged from the residence and departed in the Explorer.

Detective Desmarais followed the defendant back to 189 Walker Street. Another police cruiser, driven by Lieutenant James Hodgdon, pulled into the lot. As the officers got out of their vehicles, the defendant looked at them and then drove

away. With Detective Desmarais following, the defendant ignored a stop sign, traveled at a high rate of speed, and detoured through a parking lot to circumvent traffic. Although Detective Desmarais attempted to keep pace, he lost sight of the defendant and radioed for assistance.

Officer Stephen Beland, who was patrolling nearby in a marked police cruiser, heard the dispatch with a description of the Explorer. He spotted the Explorer, activated his blue lights, and pulled the vehicle over in the vicinity of 189 Walker Street. As he did so, he observed that the defendant was leaning to his right.

As Officer Beland got out of his cruiser, he saw the defendant reach down toward the center console. The defendant was leaning to the right, placing his hands behind and underneath his torso, and sitting up and down, and seemed to be concealing something behind the right side of his torso.

Officer Beland approached the Explorer with his firearm drawn and ordered the defendant to show his hands. The defendant did not comply and kept his hands tucked underneath and behind him. Officer Beland ordered the defendant to place his hands on the steering wheel. Meanwhile, Detective Desmarais had arrived, and also directed the defendant to show his hands. Eventually the defendant complied and the officers ordered him to get out of the vehicle.

Detective Desmarais led the defendant toward the rear of the vehicle. Officer Beland indicated that the defendant may have been hiding something in the vehicle and proceeded to search the area of the vehicle over which the defendant had had immediate control. He informed Detective Desmarais that he did not find any contraband.

During the subsequent pat-down of the defendant, who was wearing shorts, the defendant moved away and clenched his buttocks when Detective Desmarais reached the area of the rear waistband of his shorts. This observation, coupled with the information shared by Officer Beland, raised the suspicion that the defendant was concealing drugs. Proceeding with the pat-down, Detective Desmarais did an exterior sweep outside of the defendant's shorts and felt a lump between his buttocks that did not appear to be a weapon.

Detective Desmarais walked the defendant to a more secluded

area by a house and, after compelling the defendant to spread his legs apart, pulled back the waistband to the defendant's shorts and observed a clear plastic bag containing a tan powder protruding from between his buttocks. Detective Desmarais told Lieutenant Hodgdon, who had arrived, "He's hiding it in his ass." Suddenly, the defendant tried to run away, striking Detective Desmarais with his elbow during his attempt to do so. A struggle ensued between the defendant and Detective Desmarais. The defendant clenched his fist and turned toward Detective Desmarais, who was telling the defendant that he was being placed under arrest. Detective Desmarais punched the defendant on the left side of his jaw in order to "create space." Both men fell to the ground, with the defendant's face striking the sidewalk. The defendant continued to try to escape, but, with the assistance of Officer Beland and two other officers, Detective Desmarais was able to handcuff the defendant's arms behind his back.

While in handcuffs and lying face down on the sidewalk, the defendant tried to reach down into his shorts. In response, Detective Desmarais grabbed the defendant's hand and removed it. He then pulled back the waistband to the defendant's shorts, exposing his buttocks to public view in so doing, and retrieved the bag from between the defendant's buttocks. After the drugs were seized, the defendant's father approached the scene and observed his son lying face down on the sidewalk with his buttocks exposed.

The defendant was indicted on charges of possession of a class A controlled substance (heroin) with intent to distribute, as a subsequent offense, G. L. c. 94C, § 32 (*a*) and (*b*); being a habitual offender, G. L. c. 279, § 25; assault and battery on a police officer (Detective Desmarais), G. L. c. 265, § 13D; and resisting arrest, G. L. c. 268, § 32B. He moved to suppress the drugs seized from him, claiming, as relevant here, that the drugs were obtained as the result of an unlawful search in violation of the Fourth and Fourteenth Amendments to the United States Constitution, arts. 12 and 14 of the Massachusetts Declaration of Rights, and G. L. c. 276, § 1.[1] After an evidentiary hearing, the judge agreed and allowed the motion. The

---

[1]General Laws c. 276, § 1, provides in relevant part:

"A search conducted incident to an arrest may be made *only* for the

judge concluded that Detective Desmarais's separate actions of lifting back the defendant's waistband visually to inspect the defendant's buttocks area and later to retrieve the drugs amounted to strip searches that he concluded were unreasonably conducted.[2]

2. *Discussion.* We assume, without deciding, that the officers had probable cause to arrest the defendant for possession of drugs and that they therefore were justified, as a matter of constitutional and statutory law, in conducting a search of the defendant's person for concealed drugs incident to that arrest. See *Commonwealth* v. *Prophete*, 443 Mass. 548, 552 (2005), and cases cited (once custodial arrest occurs no further justification needed for search of person to discover evidence of crime for which person was arrested). Searches incident to an arrest, however, "may be unconstitutional notwithstanding the lawful arrest, because they involve inspections of such a highly personal nature, or are conducted in such a manner, as to constitute an unreasonable intrusion on an individual's privacy." *Id.* at 554. A search of a defendant "lawfully could progressively extend into a strip (or a visual body cavity) search only if such a search was justified by probable cause to believe that the defendant had concealed [drugs] on his person or his clothing that would not otherwise be discovered by the usual search incident to arrest."[3] *Id.* See *Commonwealth* v. *Thomas*, 429 Mass. 403, 408 (1999) (concluding that probable cause is appropriate standard to apply to strip and visual body cavity searches). This is so because "strip or visual body cavity searches, by their very

purposes of seizing fruits, instrumentalities, contraband and other evidence of the crime for which the arrest has been made, in order to prevent its destruction or concealment; and removing any weapons that the arrestee might use to resist arrest or effect his escape. Property seized as a result of a search in violation of the provisions of this paragraph shall not be admissible in evidence in criminal proceedings." (Emphasis added.)

[2]The defendant does not challenge the judge's conclusions that the stop and initial pat-down of the defendant were justified.

[3]For "strip and visual body cavity searches" to be permissible under our State Constitution, we require a probable cause standard. See *Commonwealth* v. *Thomas*, 429 Mass. 403, 408 (1999). This standard is more stringent than the standard for such searches set forth under the Fourth Amendment to the United States Constitution, which is reasonable suspicion. See *Bell* v. *Wolfish*, 441 U.S. 520, 559 (1979).

nature, are humiliating, demeaning, and terrifying experiences that, without question, constitute a substantial intrusion on one's personal privacy rights protected under the Fourth Amendment and art. 14." *Commonwealth* v. *Prophete, supra* at 553.

Notwithstanding the judge's conclusion that Detective Desmarais had "sufficient probable cause to believe that the defendant was concealing drugs in his buttocks to justify a strip or visual body cavity search," the Commonwealth argues that Detective Desmarais's separate actions of lifting back the defendant's waistband visually to inspect the defendant's buttocks and later to retrieve the drugs, contrary to the judge's determinations, did not amount to strip searches. We have noted that "[a] visual body cavity search extends to a visual inspection of the anal and genital areas." *Commonwealth* v. *Thomas, supra* at 407 n.4, citing *Cookish* v. *Powell,* 945 F.2d 441, 444-445 n.5 (1st Cir. 1991). In *Commonwealth* v. *Prophete, supra* at 557, we adopted a definition of the term "strip search" to mean a search "in which a detainee is commanded to remove the last layer of his or her clothing." We concluded in that case that a strip search had not occurred because, although the defendant had been ordered to remove his shirt, shoes, socks, and pants, he was never instructed or required to remove his underwear, which constituted the last layer of his clothing.[4] *Id.* at 555 & n.10, 557.

Recently, the United States Supreme Court confronted the question "whether the Fourth Amendment requires correctional officials to exempt some detainees [who have committed minor offenses] who will be admitted to a jail's general population" from "a close visual inspection while undressed."[5] *Florence* v. *Chosen Freeholders of the County of Burlington,* 132 S. Ct.

---

[4]There is another type of intrusive search, a "manual body cavity search," which involves some degree of touching and probing of body cavities." *Commonwealth* v. *Thomas, supra,* citing *Rodriques* v. *Furtado,* 410 Mass. 878, 888 (1991). With respect to manual body cavity searches, there must be "a strong showing of particularized need supported by a high degree of probable cause," before such a search may occur. *Rodriques* v. *Furtado, supra.*

[5]Specifically, the petitioner in *Florence* v. *Chosen Freeholders of the County of Burlington,* 132 S. Ct. 1510, 1514 (2012), after being transferred to a county jail, was instructed, along with other detainees, to remove his clothing. Thereafter, a correction officer looked for body markings, wounds, and contraband. *Id.* The officer also, without touching the petitioner and other

1510, 1513, 1515 (2012). The Court concluded that such exemptions were not required by the Fourth Amendment and that the search procedures at issue "struck a reasonable balance between inmate privacy and the needs of the institutions."[6] *Id.* at 1523. In so doing the Court pointed out that the term "strip search" is "imprecise." *Id.* at 1515. The Court explained:

> "[A strip search] may refer simply to the instruction to remove clothing while an officer observes from a distance of, say, five feet or more; it may mean a visual inspection from a closer, more uncomfortable distance; it may include directing detainees to shake their heads or to run their hands through their hair to dislodge what might be hidden there; or it may involve instructions to raise arms, to display foot insteps, to expose the back of the ears, to move or spread the buttocks or genital areas, or to cough in a squatting position. . . . [T]he term does not [necessarily] include any touching of unclothed area by the inspecting officer."

*Id.*

Insofar as relevant here, Detective Desmarais's action of lifting back the defendant's waistband to retrieve the drugs from between his buttocks and publicly exposing the defendant's buttocks while so doing, constituted a strip search under both our State Constitution and the Federal Constitution.[7] The action involved unconsented-to police observation of the defendant's intimate, private area and also involved the public exposure of the defendant's intimate, private area, all of which amounted to a significant intrusion of the defendant's privacy.

The Commonwealth argues that our decision in *Commonwealth*

---

detainees, "looked at their ears, nose, mouth, hair, scalp, fingers, hands, arms, armpits, and other body openings." *Id.* The petitioner alleged that "he was required to lift his genitals, turn around, and cough in a squatting position as part of the process." *Id.*

[6] As noted by Justice Alito in his concurring opinion, the Court did "not hold that it is *always* reasonable to conduct a full strip search of an arrestee whose detention has not been reviewed by a judicial officer and who could be held in available facilities apart from the general population." *Florence* v. *Chosen Freeholders of the County of Burlington, supra* at 1524 (Alito, J., concurring).

[7] We leave for another day whether Detective Desmarais's initial action of lifting back the defendant's waistband visually to inspect the defendant's buttocks amounted to a strip search under our State and Federal Constitutions.

v. *Prophete, supra* at 557, requires that a person be completely unclothed to permit visual inspection of the naked person in order for a strip search to occur, which was not the case here when Detective Desmarais removed the drugs from the defendant's buttock area. This purported mandate, however, has not been imposed by us; rather, what we stated in *Commonwealth* v. *Prophete, supra,* is that the last layer of clothing of a detainee be removed. The requirement must be viewed in the context of that case, namely, the defendant remained in his underwear after having removed other garments; his intimate, private areas were not unclothed and exposed. In the circumstances it was not necessary for us to state the scope of all strip searches, including the notion that the actual removal of all clothing from a person is not the only manner of accomplishing a strip search. A strip search also may occur when a detainee remains partially clothed, but in circumstances during which a last layer of clothing is moved (and not necessarily removed) in such a manner whereby an intimate area of the detainee is viewed, exposed, or displayed.

We next examine the manner in which this search of the defendant was conducted. For a visual body cavity search and a strip search to be constitutional under the Fourth Amendment and art. 14, such searches also must be reasonably conducted. See *Commonwealth* v. *Thomas, supra* at 407, citing *Bell* v. *Wolfish,* 441 U.S. 520, 559 (1979). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, . . . and the place in which it is conducted."[8] *Bell* v. *Wolfish, supra.* Courts assessing the reasonableness of similar searches have considered a number of factors. Concerning the place where such a search is conducted, courts have indicated that, in order to preserve a detainee's privacy, a private room is

[8]The justification for initiating a search is also a factor in determining reasonableness, see *Bell* v. *Wolfish,* 441 U.S. 520, 559 (1979), but we have assumed, without deciding, that probable cause existed for the searches that took place in this case.

preferable. See *Commonwealth* v. *Thomas, supra* at 409 n.5; *United States* v. *Hambrick*, 630 F.3d 742, 748 (8th Cir.), cert. denied, 131 S. Ct. 2919 (2011). In addition, we have cautioned that, in the absence of exigent circumstances, "the searches should always be done where no one, other than the investigating officer or officers, can see the person being searched." *Commonwealth* v. *Thomas, supra.* See *Jones* v. *Edwards*, 770 F.2d 739, 742 (8th Cir. 1985) (police should "take precautions to insure that the detainee's privacy is protected from exposure to others unconnected to the search"). How a search is conducted is of the utmost importance, with the least amount of intrusion constituting the better practice. See *Spencer* v. *Roche*, 659 F.3d 142, 147 (1st Cir. 2011). See also *United States* v. *Hambrick, supra* (officers did not touch defendant, but rather allowed him to remove drugs "on his own"). Whether a person of the same gender conducts the search should be given consideration. See *Roberts* v. *State*, 239 F.3d 107, 113 (1st Cir. 2001). At all times the potential harm to a detainee's health and dignity should be taken into account in assessing the reasonableness of the intrusion. *Spencer* v. *Roche, supra.* While each case will warrant decision on its own unique facts as well as the existence of any exigent circumstances, which are not to be disregarded, we conclude that the above-stated factors should be considered in determining the reasonableness of a visual body cavity or strip search not only under the Federal Constitution, but also under our State Constitution.[9]

Here, with regard to the strip search, at the time when Detective Desmarais removed the drugs from between the defendant's buttocks area, the police did not, as we suggested in *Commonwealth* v. *Thomas, supra* at 409 n.5, conduct the search in a private room or in any private location. The handcuffed defendant was face down on a public sidewalk and surrounded by four police officers. Detective Desmarais had determined that the lump in the rear of the defendant's shorts was not a weapon. Thus, there was no concern that the defendant could have used

[9]While developing a written policy concerning when and how to conduct a visual body cavity search and a strip search may be helpful to police officers and may serve to guard against unnecessary intrusions, compliance with such a policy is not determinative on the issue of reasonableness but, rather, serves only as one factor in the equation.

a weapon against the officers, fled, or destroyed evidence.[10] With no exigency existing, the defendant should have been transported to a private space or location. Doing so would have avoided what followed, namely, the public exposure of his buttocks, an embarrassing and humiliating intrusion of the defendant's privacy. Indeed, the policy of the Lowell police department prohibits strip searches outside the confines of a police station. In the circumstances, the location of this search was inappropriate.

The manner in which the search proceeded, whereby the defendant's buttocks were publicly exposed in the absence of exigent circumstances, was unreasonable. See *Paulino* v. *State*, 399 Md. 341, 359 (2007) (instead of reaching into defendant's underwear to retrieve contraband, officer lifted up defendant's underwear and publicly exposed his buttocks, which rendered search unreasonable). There was no explanation in the record why Detective Desmarais was able to inspect the defendant's buttocks area for drugs without public exposure, but was unable to retrieve the drugs without the resulting exposure. If Detective Desmarais could not have retrieved the drugs without exposing the defendant's buttocks, he should not have conducted the search on a public sidewalk. Both the inappropriate location of the search and the manner in which it was conducted rendered the strip search constitutionally unreasonable under both the Federal and State Constitutions.[11]

3. *Conclusion.* We affirm the order allowing the motion to suppress.

*So ordered.*

CORDY, J. (concurring, with whom Gants, J., joins). I concur in the judgment of the court that pulling down the defendant's shorts and exposing his buttocks to public view while retrieving

---

[10]The Commonwealth contends that the location of the search was appropriate in view of the combative actions of the defendant, but those actions preceded his arrest and the retrieval of the drugs. This was not a situation whereby the defendant's buttocks were exposed because of his own actions.

[11]In view of our conclusion, we need not address the defendant's remaining arguments.

a bag of drugs from between them was an unreasonable strip search, and, accordingly, the motion judge's ruling suppressing the drugs should be affirmed. I write separately to address briefly the issue of the initial action of Detective Desmarais in pulling back the waistband on the defendant's shorts to ascertain whether what the defendant had shoved down the back of his pants as the police approached his stopped automobile was contraband, thereby justifying his arrest. Whatever the object was, it had been detected as a "lump" during the pat frisk of the defendant, and warranted (if not required) some further on-scene investigation. In pursuing that investigation, the detective moved the defendant away from public view, to a secluded area, and merely pulled back his waistband, enabling the detective to see what then appeared to be a clear plastic bag containing a tan powder protruding from between the defendant's buttocks.

In my view, however a court might label this intrusion into the defendant's privacy, it was perfectly reasonable in scope and manner and did not result in either the public disclosure of the defendant's buttocks or undue embarrassment or humiliation. Consequently, it was proper police conduct in the circumstances, and I would so hold.