Gants, CJ.
(dissenting, with whom Spina and Cordy, JJ., join). I agree with the court regarding the law. The pulling back of the defendant’s waistband, first to observe the object that the defendant was “jocking,” and later to retrieve it, were strip searches under our law. See Commonwealth v. Morales, 462 Mass. 334, 342 (2012) (“A strip search . . . may occur when a detainee remains partially clothed, but in circumstances during which a last layer of clothing is moved [and not necessarily removed] in such a manner whereby an intimate area of the detainee is viewed, exposed, or displayed”). Probable cause was needed to conduct these strip searches. See id. at 339, quoting Commonwealth v. Prophete, 443 Mass. 548, 554 (2005) (“A search of a defendant ‘lawfully could progressively extend into a strip [or a visual body cavity] search only if such a search was justified by probable cause to believe that the defendant had concealed [drugs] on his person or his clothing that would not otherwise be discovered by the usual search incident to arrest’ ”). And to pass *158 constitutional muster, the strip searches must have been reasonably conducted under the circumstances. See Morales, supra at 342 (“For a visual body cavity search and a strip search to be constitutional under the Fourth Amendment [to the United States Constitution] and art. 14 [of the Massachusetts Declaration of Rights], such searches also must be reasonably conducted”).
I dissent because I disagree with the court’s application of the law to these facts. Based on the factual findings of the motion judge, which were not clearly erroneous, there was probable cause to believe that the defendant was “jocking” illegal drugs, and it was reasonable under the circumstances to pull the waistband of his shorts back to observe and later retrieve the plastic bag containing the drugs, because the only persons who could observe the defendant’s buttocks and groin area in such a strip search were the detectives who conducted it. See id. at 343.
1. Probable cause for the search. Based on the judge’s findings, when Brockton police Detective Eric Hilliard pulled back the defendant’s waistband to look for drugs, the following information was known to the police:
• As the detectives approached the vehicle in which the defendant was a passenger, the defendant was seen reaching his left arm behind his body.
• When Detective Brian Donahue approached the vehicle, the defendant appeared “extremely nervous — he stared straight ahead seeking to avoid eye contact, his hands trembled, his chest heaved, and he was breathing rapidly.” The defendant’s demeanor was different from previous encounters Detective Donahue had with the defendant, where the defendant was “engaging” and “spoke openly.”
• The defendant had a wad of $500 in cash in his front pocket.
• When Detective Donahue conducted a frisk of the defendant’s inner thighs and crotch area, he felt a hard object behind the defendant’s testicles that he knew was not “part of the male anatomy.”
• When Detective Donahue asked the defendant what he was hiding there, the defendant twice denied hiding anything.
• Detective Donahue knew from his training and experience *159 that drug dealers hide narcotics in the buttocks area, and had recovered narcotics hidden in that manner from drug dealers before. He referred to this practice as “jocking something.”
Courts inside and outside Massachusetts have recognized that, when a police officer feels a foreign object in a male’s groin or buttocks area, it is a reasonable inference that the object contains illegal drugs. See Commonwealth v. Clermy, 421 Mass. 325, 327, 330-331 (1995) (“It is eminently reasonable to infer that a prescription bottle carried [between the defendant’s legs in the area of his genitals] would contain contraband, and, most probably, a controlled substance”); United States v. Walker, 181 F.3d 774, 779 (6th Cir.), cert. denied, 528 U.S. 980 (1999) (seizure of plastic bag justified where police officer felt bulge under suspect’s pants while pat frisking groin and buttocks); People v. Champion, 452 Mich. 92, 111-112 (1996), cert. denied, 519 U.S. 1081 (1997) (probable cause to believe that pill bottle contained contraband where police discovered bottle in defendant’s groin region). See also 2 W.R. LaFave, Search and Seizure § 3.6(b), at 403-404 (5th ed. 2012) (“If the package is concealed in the groin area, a finding of probable cause is much more likely. And even if the touching does not alone supply probable cause, it may contribute together with other facts to a probable cause finding” [footnotes omitted]).
This inference grows stronger where the officer has found narcotics hidden in that manner before and knows from his or her training and experience that drug dealers hide narcotics there. See United States v. Ashley, 37 F.3d 678, 681 (D.C. Cir. 1994), cert. denied, 513 U.S. 1181 (1995) (probable cause where officer felt object in groin area during patfrisk and officer testified that he had previously found narcotics hidden in that area of body).
This inference grows stronger still where the defendant twice denies that he is hiding anything, even though it is plain that he is. See Commonwealth v. Gentile, 437 Mass. 569, 574 (2002) (“inconsistent, false, [and] implausible” statements by defendant to police contributed to finding of probable cause). See also United States v. Ilazi, 730 F.2d 1120, 1127 (8th Cir. 1984) (along with other suspicious circumstances, defendant’s failure to explain unusual bulge in boot constituted probable cause to arrest for narcotics offense).
The discovery that the defendant was “jocking something” and his false denial that he was hiding anything gave incriminating *160 meaning to the earlier observation of the defendant reaching his left arm behind his body, which is consistent with his placement of something in his buttocks under his loose fitting athletic shorts. It also gave incriminating meaning to the defendant’s demeanor with Detective Donahue, which was different from prior encounters.
I recognize that, before this encounter, there was no information that the defendant dealt or used controlled substances. But such information would simply have gilded the lily of probable cause. There was abundant probable cause without this information. After all, if the object did not contain contraband, why would a person keep it in his buttocks and then, when it was felt by a police officer during a patfrisk, deny its very existence?[1]
2. Reasonableness of the strip search. In evaluating the reasonableness of a strip search, “[h]ow a search is conducted is of the utmost importance, with the least amount of intrusion constituting the better practice.” Morales, 462 Mass, at 343. Here, the defendant’s clothing was not removed, and his buttocks and groin area were not exposed to any passerby who might observe the search. Rather, the searches in this case were strip searches only because a detective lifted the waistband of the defendant’s athletic shorts and underwear, thereby exposing his private parts to the detectives who conducted the search. There is no reason to believe that, in either search, anyone other than the searching detectives could have seen the defendant’s buttocks or groin. During the second search, where the detectives retrieved the plastic bag from the defendant’s buttocks, they moved to an alley between residential buildings in an effort to obtain greater privacy, but all they ultimately did was pull back the defendant’s waistband again, this time perhaps a bit further. This is a far cry from the strip search in the Morales case where the defendant was seen “lying face down on the sidewalk with his buttocks exposed.” See id. at 338. Certainly, if the police had taken the defendant to a private room to conduct a strip search, no one would question that it was conducted reasonably, because the only persons who would then see the defendant’s buttocks and groin would be the police officers conducting the strip search. See *161 id. at 342-343 (“Concerning the place where such a search is conducted, courts have indicated that, in order to preserve a detainee’s privacy, a private room is preferable”). But the same is true here, because all that the searching detectives did was pull back the defendant’s waistband, exposing his private areas only to the detectives who conducted the search. Under these circumstances, I conclude that the strip searches were “perfectly reasonable in scope and manner and did not result in either the public disclosure of the defendant’s buttocks or undue embarrassment or humiliation.” See id. at 345 (Cordy, J., concurring).
3. Conclusion. Because I conclude that there was probable cause to believe that the defendant was “jocking” illegal drugs, and that the conduct and manner of the strip searches to observe and later retrieve the plastic bag containing the drugs were reasonable under the circumstances, I would affirm the motion judge’s denial of the defendant’s motion to suppress. Therefore, I respectfully dissent.

I also recognize that this is the most pretextual of stops: the detectives were looking for a legal justification to stop the vehicle, and found it when they saw that the license plate was not properly illuminated. But even if we were, for this reason, to apply heightened scrutiny to our probable cause analysis, the facts here survive such scrutiny.