NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-717                                          Appeals Court

COMMONWEALTH  vs.  LYRIQ RIVERA.

No. 22-P-717.

Suffolk.     September 12, 2023. – August 5, 2024.

Present:  Massing, Henry, & Brennan, JJ.

Controlled Substances.  Constitutional Law, Search and seizure.
    Search and Seizure, Protective frisk, Search incident to
    lawful arrest.  Practice, Criminal, Motion to suppress.

Indictments found and returned in the Superior Court
Department on March 29, 2022.

A pretrial motion to suppress evidence was heard by
Catherine H. Ham, J.

An application for leave to prosecute an interlocutory
appeal was allowed by David A. Lowy, J., in the Supreme Judicial
Court for the county of Suffolk, and the appeal was reported by
him to the Appeals Court.

Jeffrey A. Garland, Committee for Public Counsel Services,
for the defendant.
Ian MacLean, Assistant District Attorney (John C. Mooney,
Assistant District Attorney, also present) for the Commonwealth.

HENRY, J.  The defendant, Lyriq Rivera, was charged with

one count of trafficking in fentanyl, G. L. c. 94C, § 32E (c

1/2), and one count of trafficking in cocaine, G. L. c. 94C, § 32E (b) (1). The defendant filed a motion to suppress, among other things, physical evidence obtained during a search of the defendant, including the narcotics obtained by the police.[1] After an evidentiary hearing, the judge denied that aspect of the motion, relying on the dissenting opinion in Commonwealth v. Amado, 474 Mass. 147 (2016), to conclude that the search of the defendant's genital area was reasonable. Under the Amado majority, which is controlling precedent from the Supreme Judicial Court, the defendant was subject to an unreasonable public strip search. Accordingly, we reverse.

Background.[2] On January 15, 2021, at approximately 2:40 P.M., two Boston police officers were patrolling in a marked cruiser on Norfolk Street when they observed a gray Infiniti sedan with "extremely" dark tinted windows. They conducted a query of its license plate, which indicated that the sedan's inspection sticker had expired and that the registration was "cancelled"; they effected a motor vehicle stop without

---

[1] The defendant also moved to suppress evidence found in the search of the vehicle he was driving and statements he made after the search. Those portions of the motion were denied and granted respectively and are not the subject of this appeal.

[2] We summarize the facts from the motion judge's findings, supplemented in part by our independent review of the body-worn camera footage. See Commonwealth v. Yusuf, 488 Mass. 379, 380-381 (2021); Commonwealth v. Agogo, 481 Mass. 633, 633 (2019).

incident. The defendant, who was the driver, provided officers with his learner's permit. However, the defendant was operating in violation of G. L. c. 90, § 8B, because the only passenger in the vehicle was unlicensed, in violation of the requirement that a learner-driver be accompanied by a qualified licensed driver. One officer ordered the defendant out of the vehicle and conducted a patfrisk by the driver's side door of the sedan. When the officer frisked the defendant's groin area, he felt a foreign object that he did not believe to be part of the defendant's body and that was larger than a golf ball and hard. The officer did not suspect the foreign object was a weapon. Rather, based on his training and experience, he suspected that the object was narcotics. The officer questioned the defendant about the object; the defendant claimed it was only his genitals. Another officer arrived on scene and joined the frisking of the defendant's groin area. A steady stream of traffic drove by during the frisking.

The officer then brought the defendant behind the sedan, pulled out a pair of gloves, and put them on. As the search of the defendant's groin continued, the defendant verbally expressed that he was "anxious." After further frisking outside the defendant's pants, the defendant was handcuffed; the officer then moved and positioned the defendant against the side of the police cruiser so that the defendant was facing the sidewalk.

It was daytime.  The officer proceeded to pull aside the waistbands of the defendant's two pairs of pants and one pair of underwear and inspected the defendant's genitals.  Based on the body-worn camera footage, which was admitted into evidence and viewed by the judge, the officer was unable to identify the object through his visual inspection, and he continued to frisk the defendant's groin for approximately ten seconds, asking "what [was] underneath" the defendant's genitals.  Finally, the officer placed his hand inside the defendant's underwear and retrieved a plastic bag containing suspected narcotics.  The recording shows that while the defendant was largely obscured from the view of oncoming traffic by the cruiser, the front of his body was fully visible to passersby on the sidewalk as well as anyone looking out a window from the nearby residential buildings and a family daycare.  Indeed, two people walked by during the patfrisk, and later, a woman passed by and looked toward the officer as he pulled the defendant's waistbands aside to view his genitals.

Discussion.[3]  It is undisputed that the police had the right to search the defendant as a search incident to a lawful arrest

---

[3] "In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error . . . .  We review independently the application of constitutional principles to the facts found" (citation omitted).  Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).

for operating a motor vehicle with a learner's permit without a licensed driver occupying a seat beside him. See G. L. c. 90, § 8B ("The holder of a learner's permit who operates a motor vehicle without a duly licensed driver . . . who is occupying a seat beside the driver shall be deemed to be operating a motor vehicle without being duly licensed . . ."); G. L. c. 90, §§ 10, 21 (authorizing arrest without warrant for operating motor vehicle without license); Commonwealth v. Perkins, 465 Mass. 600, 605 (2013) (search incident to lawful arrest is exception to warrant requirement); Commonwealth v. Jackson, 464 Mass. 758, 761 (2013) (same).

However, a strip search, especially a public one, requires more than probable cause to arrest; rather, the search must be "justified by probable cause to believe that the defendant [has] concealed [drugs] on his person or his clothing that would not otherwise be discovered by the usual search incident to arrest." Commonwealth v. Morales, 462 Mass. 334, 339 (2012), quoting Commonwealth v. Prophete, 443 Mass. 548, 554 (2005). Additionally, the strip search must be conducted in a reasonable manner. Morales, supra at 342. Under controlling Supreme

---

"We leave to the judge the responsibility of determining the weight and credibility to be given oral testimony at the motion hearing, but review de novo any findings based entirely on a video recording" (quotation and citations omitted). Yusuf, 488 Mass. at 385.

Judicial Court precedent, the officer conducted an unreasonable public strip search of the defendant.

1. Whether a public strip search occurred. For the first time on appeal, the Commonwealth argues that the search of the defendant was not a strip search. Passing over whether the Commonwealth waived the issue by not raising it below, see Commonwealth v. Alexis, 481 Mass. 91, 101 (2018), we discern no error in the motion judge's finding that a strip search occurred. In Morales, the Supreme Judicial Court rejected the Commonwealth's argument that a detainee must be fully unclothed for a "strip search" to occur. See Morales, 462 Mass. at 341-342. The court explained that a "strip search also may occur when a detainee remains partially clothed, but in circumstances during which a last layer of clothing is moved (and not necessarily removed) in such a manner whereby an intimate area of the detainee is viewed, exposed, or displayed." Id. at 342. Similarly, in Amado, the Supreme Judicial Court, applying Morales, 462 Mass. at 342, concluded that a search where a defendant's private area is "viewed and exposed" is a strip search. Amado, 474 Mass. at 154. In Amado, the "arresting officer opened the waistband of the defendant's underwear, exposed his bare skin, directed a flashlight on the area, and then retrieved the object." Id. Here, as in Amado, the arresting officer opened the waistband of the defendant's

underwear, exposed his skin, and, aided by daylight rather than a flashlight, retrieved the object. The Amado decision is controlling. The motion judge did not err in finding that a strip search occurred in these circumstances.

2. Whether the strip search was lawful. We assume, without deciding, that officers had probable cause to conduct a strip search. See Agogo, 481 Mass. at 637; Prophete, 443 Mass. at 553-554. As to the question of whether the strip search was otherwise lawful, we conclude that the motion judge erred in relying on the dissent rather than the majority opinion of Amado. Under Amado and Morales, the search was unreasonable.

It is a fundamental principle of common law jurisprudence that judges must follow precedent except in extraordinary circumstances where the court has the explicit authority to alter the law. See Shiel v. Rowell, 480 Mass. 106, 108-109 (2018) (adherence to precedent is "preferred course" because it promotes reliability and integrity of judicial system [citation omitted]). Just as this court is bound by the decisions of the Supreme Judicial Court, so too are the trial court judges of Massachusetts. Commonwealth v. Vasquez, 456 Mass. 350, 356 (2010) (Supreme Judicial Court "is the highest appellate authority in the Commonwealth, and [its] decisions on all questions of law are conclusive on all Massachusetts trial courts and the Appeals Court").

After describing the opinion of the majority and the dissent in Amado, the motion judge opted to follow the dissent: "Like the dissent opinion in Amado, I find that the strip search [of the defendant] was reasonable in scope and manner." Neither we nor the trial court judges have the "power to alter, overrule or decline to follow the holding of . . . the Supreme Judicial Court." Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485 (2003). Accordingly, the motion judge was bound to follow the holdings of Amado and Morales, and erred by failing to do so.

A strip search is unreasonable where, absent exigent circumstances, it is conducted in public. Amado, 474 Mass. at 156-157; Morales, 462 Mass. at 342-343, quoting Commonwealth v. Thomas, 429 Mass. 403, 409 n.5 (1999) (search is reasonable "where no one, other than the investigating officer or officers, can see the person being searched"). A member of the public need not in fact witness the search; it is the location of the search itself that drives the inquiry. Amado, supra. In Amado, as here, an officer had dispelled safety concerns and had felt an object in the defendant's genital area that he knew was not a weapon. Id. at 149, 153. There, police officers took a defendant into an alleyway in between two nearby, residential buildings and shined a flashlight on his buttocks. Id. at 149, 160. The majority held the search was an unreasonable strip search where there was the possibility that a member of the

public could have witnessed it. Id. at 157. Similarly, in Morales, the Supreme Judicial Court held that the search was unreasonable where the defendant's buttocks were exposed on a public sidewalk. Morales, 462 Mass. at 343-344. "With no exigency existing, the defendant should have been transported to a private space or location." Id. at 344.

Here, the search occurred on a busy public street adjacent to a sidewalk and no exigency existed. While officers attempted to block the defendant on one side with a cruiser, the front of his body was exposed to multiple residential buildings and a preschool. Indeed, the body-worn camera footage shows a pedestrian walk past the scene during the strip search, a car's width away.

Further, the officer did not believe the object he felt was a weapon. See Amado, 474 Mass. at 157. There was no indication that the defendant could not be safely transported to a station or that he could not have been safely detained and searched out of the eye of the public.[4] Given the strong preference for strip

---

[4] The Commonwealth contends, relying on the facts of Commonwealth v. Vick, 90 Mass. App. Ct. 622, 624 (2016), that the danger that the defendant might ingest or access secreted narcotics during transport established exigency. The argument is unavailing. See Morales, 462 Mass. at 343-344 (no exigent circumstances where defendant was handcuffed face down on sidewalk surrounded by four officers and officers knew object in defendant's shorts was not weapon).

searches to be conducted in private, see <u>Morales</u>, 462 Mass. at 342-343, and the lack of a sufficient demonstration of exigency, the public strip search was unreasonable.

<u>Conclusion</u>.  We vacate that much of the order denying the motion to suppress the physical evidence recovered during the strip search and remand the matter to the Superior Court for further proceedings consistent with this opinion.

<u>So ordered</u>.