OPINION

ECKERSTROM, Presiding Judge.
¶ 1 A Cochise County grand jury indicted appellee Patricia Barnes on one count each of possessing a dangerous drug for sale, a class two felony, and resisting arrest by using physical force, a class six felony. Barnes moved to suppress evidence found during a strip search following her arrest, which included a bag containing methamphetamine that protruded from her anus and was removed during the search. The trial court granted the motion, finding that the strip search, lawful under the facts of the case, became a body cavity search, requiring a warrant, at the moment the officer touched the bag that extended into Barnes’s rectum. On appeal, the state contends that, because the officer did not touch Barnes internally, the officer did not require a warrant to han- *280 die the protruding portion of the bag. We affirm.
¶ 2 In reviewing a trial court’s ruling on a motion to suppress evidence, we defer to its factual findings, State v. Bonillas, 197 Ariz. 96, ¶2, 3 P.3d 1016 (App.1999), and review only what was presented during the suppression hearing, State v. Estrada, 209 Ariz. 287, ¶ 2, 100 P.3d 452, 453 (App.2004). On June 27, 2005, a Willcox police officer attempted to arrest Wesley Bohlender on an outstanding warrant. Barnes, Bohlender’s girlfriend, intervened and tried to prevent the officer from arresting Bohlender. During the struggle, the officer saw Bohlender hand a small paper item to Barnes. The officer then saw Barnes move her hand down the front of her pants. He arrested Barnes for intervening in the arrest of Bohlender.
¶ 3 The arresting officer told Sergeant Childers, who transported Barnes to a Cochise County Sheriffs detention facility, that Barnes should be searched because she might have some contraband. Prior to booking Barnes, and without seeking a search warrant, Childers arranged for Lori Armstrong, a female city code enforcement officer,[1] to search Barnes. Childers did not specify the type or extent of search that he sought, but Armstrong understood that she was to perform a strip search.
¶ 4 Armstrong took Barnes to an isolated cell and ordered Barnes to disrobe. Armstrong instructed Barnes to show the area behind her ears, then bend over and spread her buttocks. Armstrong saw something protruding out of Barnes’s anus and asked Barnes to remove it. Barnes did not do so. Wearing rubber gloves, Armstrong then “grabbed a hold of the item” and it fell into her hands. The item was a bag that allegedly contained methamphetamine. During a subsequent interview, Barnes purportedly made incriminating statements about the bag.
¶ 5 On appeal, the state maintains the trial court erred in suppressing the bag removed from Barnes’s rectum, contending “[t]he police may remove and examine what they find during the course of a warrantless strip search, including items found sticking out of the anus.” We review a trial court’s ruling on a motion to suppress for an abuse of discretion. State v. Fodor, 179 Ariz. 442, 448, 880 P.2d 662, 668 (App.1994). Although we defer to the trial court’s factual findings, we “review de novo legal issues and mixed questions of fact and law.” Bonillas, 197 Ariz. 96, ¶ 2, 3 P.3d at 1016.
¶ 6 The trial court found that the officer’s constitutional authority to conduct a search incident to arrest, coupled with the officer’s reasonable basis to believe that Barnes had secreted evidence on her person, justified the strip search and visual body cavity inspection. However, it concluded that a warrant was required for the officer to handle and remove the bag from Barnes’s rectum. The trial court granted Barnes’s motion, suppressing “the physical evidence seized from Defendant as well as any statements made to the police concerning such item following seizure.” The state contends the factors entitling it to conduct the strip search, coupled with the fact that the officer did not herself reach into Barnes’s body cavity — but merely handled the protruding portion of the bag— allowed the officer to remove the bag without a warrant.
¶ 7 As a threshold matter, controlling jurisprudence instructs that the state must generally secure a warrant before a law enforcement officer may intrude beyond the body’s surface. In Schmerber v. California, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966), quoting Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948), the United States Supreme Court observed:
Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that inferences to support the search “be drawn by a neutral and detached magistrate instead of being judged by the officer en *281 gaged in the often competitive enterprise of ferreting out crime.” The importance of informed, detached and deliberate determinations of the issue whether or not to invade another’s body in search of evidence of guilt is indisputable and great.
(Citation omitted.) There, the Court expressly rejected the government’s contentions that either the fact of a defendant’s arrest or the presence of probable cause obviated the need for a warrant to conduct a search beyond the body’s surface. Id. at 769-70, 86 S.Ct. at 1835. Thus, we must similarly reject the state’s suggestion here that removal of the bag in the absence of a warrant was justified by Barnes’s arrest or the likelihood that the protruding bag contained an illegal substance.[2]
¶ 8 The state primarily contends that Armstrong did not intrude beyond the surface of Barnes’s body because “no piercing, probing, or even touching of the skin was required to seize” the bag. See State v. Magness, 115 Ariz. 317, 321, 565 P.2d 194, 198 (App.1977) (visual search of area “around the rectum” permissible in absence of a warrant as part of search incident to arrest.) To address this contention, we must determine whether an officer transforms a lawful warrantless strip search into an intrusion beyond the body’s surface requiring a warrant when he or she handles an object protruding from, and extending into, an arrestee’s anal cavity. Although the state correctly observes that its officer neither inserted any object, digit, or instrumentality into Barnes, the officer’s manipulation and removal of the protruding portion of the bag necessarily exerted force on the portion of the bag extending into Barnes’s rectum. And the officer’s actions had the effect of moving the portions of the bag within Barnes’s rectum as the bag emerged. Once an officer’s actions have the effect of exerting force within an arrestee’s body, we decline to draw constitutional- distinctions based on the mechanism by which the officer does so. The invasion of privacy is the same regardless of the mechanism used.[3] See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1449, 1449 n. 11 (9th Cir.1991) (finding “Schmerber governs all searches that invade the interior of the body” and is not limited to “cases in which skin is pierced or entry is forced”). Moreover, the Court’s opinion in Schmerber instructs that the intrusiveness of a body search must be assessed in part by the potential risks of inflicting trauma or pain. 384 U.S. at 771-72, 86 S.Ct. at 1836. Although nothing in the record suggests that Barnes actually suffered any trauma or pain, we have little doubt that an officer’s removal of items extending into a suspect’s “innards” generally poses such potential risks, the relevant consideration here.[4]
¶ 9 We are not the first court to conclude that an officer must secure a warrant to remove items partially protruding from an arrestee’s rectum. In Hughes v. Commonwealth, 31 Va.App. 447, 524 S.E.2d 155, 159, 162 (2000), quoting Commonwealth v. Gilmore, 27 Va.App. 320, 498 S.E.2d 464, 469 (1998), the court found that an officer’s removal of a plastic bag protruding halfway from a defendant’s rectum constituted an “intrusive physical body cavity search” requiring a warrant in the absence of both exigent circumstances and “ ‘a clear indication that evidence is located within a suspect’s body.’” And, in People v. More, 97 N.Y.2d 209, 738 N.Y.S.2d 667, 764 N.E.2d 967, 969 (2002), quoting People v. Luna, 73 N.Y.2d 173, 538 N.Y.S.2d 765, 535 N.E.2d 1305, 1308 (1989), New York’s highest court characterized physical body cavity searches, such as the seizure of a bag partially pro- *282 trading from a suspect’s rectum, as “ ‘invasive’” and “ ‘degrading’” and found such searches “at least as intrusive” as the blood test procedures addressed in Schmerber. Accordingly, the court held the evidence found in the suspect’s rectum should have been suppressed because officers had neither complied with the warrant requirement set forth in Schmerber nor articulated exigent circumstances sufficient to obviate the need for a warrant. More, 738 N.Y.S.2d 667, 764 N.E.2d at 969-70.
¶ 10 The state counters that several cases have declined to characterize the removal of items protruding in plain view from body cavities as body cavity searches. But those cases did not squarely address the scenario presented here. Although the Washington Court of Appeals found that the removal of an item protruding out of a body is not a body cavity search, it did so exclusively in the context of determining the propriety of that action under the wording of a Washington statute. State v. Jones, 76 Wash.App. 592, 887 P.2d 461, 464 (1995). And the Ninth Circuit has held that an inspector did not conduct a body cavity search when she observed and seized a prophylactic partially protruding from a suspect’s vagina. United States v. Holtz, 479 F.2d 89, 91-92 (9th Cir. 1973). But that case focused on whether the visual inspection of the vaginal area under the specific facts constituted a body cavity search — and only inferentially addressed whether the handling and removal of the prophylactic involved an intrusion sufficient to trigger the warrant requirement of Schmerber. Holtz, 479 F.2d at 92-94. Moreover, Holtz involved a search conducted at a national port of entry, id. at 90, a context where defendants arguably enjoy a diminished expectation of privacy. See United States v. Montoya de Hernandez, 473 U.S. 531, 539, 105 S.Ct. 3304, 3309, 87 L.Ed.2d 381 (1985) (expectation of privacy less at border). Finally, to the extent Holtz can be interpreted as inferentially addressing the legal issue here, the Ninth Circuit has more recently rejected that inference. Fuller, 950 F.2d at 1449-50 (expressly applying Schmerber warrant requirement to searches into the interi- or of a person’s body).
¶ 11 The dissent contends the trial court erred in requiring a warrant for the removal of the bag because, under the specific circumstances of the case, the search was “reasonable.” But we do not agree with the dissent’s threshold premise that the officer’s act of manipulating an item extending into the defendant’s rectum, however gentle, was necessarily less intrusive than the procedure at issue in Schmerber — a blood draw the Court characterized as safe, commonplace, and nontraumatic. And, notwithstanding the Court’s acknowledgment that the blood draw was a comparatively benign intrusion, it carved no exceptions to its conclusion that police “intrusions into an individual’s body” in search of evidence would presumptively require a warrant in the absence of exigent circumstances. 384 U.S. at 772, 86 S.Ct. at 1836. Thus, to the extent the dissent suggests that some lesser types of state intrusion inside a defendant’s body could proceed without a warrant based on the mere presence of reasonable or probable cause, that view is directly contradicted by controlling jurisprudence we must follow. Id. at 771, 86 S.Ct. at 1836.
¶ 12 The dissent also maintains the officer was entitled to remove contraband from Barnes’s rectum without a warrant because the officer could see it in plain view. Correctly observing that officers need not obtain a warrant to seize evidence they are lawfully situated to observe, see Minnesota v. Dickerson, 508 U.S. 366, 374-75, 113 S.Ct. 2130, 2136-37, 124 L.Ed.2d 334 (1993), the dissent argues that no warrant should be required “in cases such as this, where contraband is visible between the cheeks of the buttocks.” But nothing in the record supports our colleague’s assertion that the officer saw contraband between the cheeks of Barnes’s buttocks. According to Armstrong’s testimony, the officer observed only something that “looked like plastic” protruding from Barnes’s rectum.[5] And Armstrong’s subsequent act of grabbing the plastic to remove *283 unexposed portions of it from Barnes’s rectum constituted a separate intrusion, which required its own constitutional basis. See Arizona v. Hicks, 480 U.S. 321, 324-25, 107 S.Ct. 1149, 1152, 94 L.Ed.2d 347 (1987) (officers who initially observed stereo equipment in plain view conducted new search, unjustified by plain view doctrine, when lifting equipment to search for serial numbers). In the absence of exigent circumstances, the constitutional basis for a search that reaches inside a person’s body is probable cause determined by a neutral detached magistrate. See Schmerber, 384 U.S. at 770, 86 S.Ct. at 1835.
¶ 13 Quoting reasoning by the United States Supreme Court in the context of searches incident to arrest, the state contends that we should adopt a “ ‘single familiar standard’ ” in setting the boundaries for warrantless searches and seizures because law enforcement officers “ ‘have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.’” New York v. Belton, 453 U.S. 454, 458, 101 5. Ct. 2860, 2863, 69 L.Ed.2d 768 (1981), quoting Dunaway v. New York, 442 U.S. 200, 213-14, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979). While we acknowledge the need for our nation’s laws to be comprehensible and practical for our law enforcement officers, we do not believe the long-standing principles that control our decision here involve unreasonable complexity. It should be intuitive that searches intruding within a person’s body involve substantial privacy interests at least parallel to those involved in searching a suspect’s home; therefore, such searches presumptively require a warrant.
CONCLUSION
¶ 14 As the Court emphasized in Schmer-ber, a governmental search within a crime suspect’s body profoundly implicates “[t]he interests in human dignity and privacy which the Fourth Amendment protects.” 384 U.S. at 769-70, 86 S.Ct. at 1835. For that reason, such searches cannot generally be conducted without a warrant. When Officer Armstrong manipulated an item extending into Barnes’s rectum in search of evidence, she intruded on those very dignity and privacy interests. Because the state failed to either secure a warrant or establish any valid exception to the warrant requirement for that search,[6] the trial court did not err in suppressing its fruits.[7]
¶ 15 Affirmed.
CONCURRING: J. WILLIAM BRAMMER, JR., Judge.

. Armstrong had never been trained in how to conduct searches of this kind, but had performed ten to fifteen strip searches prior to Barnes's search.

. Schmerber also held that the presence of exigent circumstances creates an exception to the warrant requirement in the context of a blood test. 384 U.S. at 770-71, 86 S.Ct. at 1835-36. Because the state has not contended that any exigency existed here, we need not address whether Armstrong could have conducted a body cavity search in the absence of a warrant upon such a showing.

. If an officer sought to remove a feminine tampon as part of a search, we would face the same privacy interest we address here — an item extending into a body cavity but with a portion remaining externally visible.

. When the officer grabbed the protruding plastic, she did not know the nature or content of the item extending into Barnes's rectum. For this reason, we cannot agree with the dissent's conclusion that the officer’s action posed no potential threat to Barnes's health or safety.

. We do not suggest that Armstrong's observation of the plastic was an irrelevant fact. Indeed, a magistrate might well consider the plastic's unusual location a significant factor in assessing whether probable cause existed to issue a warrant to remove it.

. As noted, the state did not argue below or on appeal that it faced any exigent circumstance that would have required Armstrong to remove the bag from Barnes's rectum before securing a warrant. The state did not maintain that the circumstances created a risk that the evidence could be destroyed or that the contents of the bag posed an imminent health risk to Barnes. Nor did the state contend that the search, conducted to investigate criminal wrongdoing before Barnes was booked, was an institutional search subject to relaxed constitutional standards. See Bell v. Wolfish, 441 U.S. 520, 560, 99 S.Ct. 1861, 1885, 60 L.Ed.2d 447 (1979) (permitting war-rantless visual body cavity searches in correctional institutions when searches are conducted in reasonable fashion in pursuit of legitimate governmental concerns). Lastly, it did not contend that the evidence would have been inevitably discovered subject to such a search after Barnes was booked. Although the state addressed some of these issues during oral argument in this court, we do not address arguments raised for the first time at that stage in the proceedings. See State v. Murdaugh, 209 Ariz. 19, ¶ 29, 97 P.3d 844, 851 (2004).

. Because we affirm the trial court’s ruling suppressing the evidence in the bag for the reasons stated above, we need not address Barnes’s contention that the officer lacked sufficient cause to conduct the strip search that ultimately led to the discovery of the protruding bag.