NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12592

COMMONWEALTH  vs.  DONNE K. AGOGO.


Suffolk.     December 3, 2018. - March 15, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Constitutional Law, Search and seizure, Probable cause.  Search
    and Seizure, Body examination, Probable cause.  Probable
    Cause.  Practice, Criminal, Motion to suppress,
    Interlocutory appeal.



Complaint received and sworn to in the Chelsea Division of
the District Court Department on March 28, 2016.

A pretrial motion to suppress evidence was heard by D.
Dunbar Livingston, J.

An application for leave to prosecute an interlocutory
appeal allowed by Botsford, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by her to
the Appeals Court.  After review by the Appeals Court, the
Supreme Judicial Court granted leave to obtain further appellate
review.


Michael A. Frates for the defendant.
Amanda Teo, Assistant District Attorney, for the
Commonwealth.

LENK, J.   The Commonwealth appeals from a District Court judge's order allowing the defendant's motion to suppress narcotics seized from the defendant's crotch area as the result of a strip search that took place in a cell at the Chelsea police station.   The motion judge determined that police did not have probable cause to believe that the defendant was concealing contraband on his person so as to justify conducting a strip search.   Because we agree that the police lacked the requisite probable cause to believe that the defendant had concealed narcotics somewhere on his person that could not have been detected through an ordinary search procedure, we affirm.

1.   Background.   We reprise the motion judge's findings of fact, supplemented, in part, by uncontroverted testimony at the hearing on the motion to suppress.   See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015); Commonwealth v. Morales, 462 Mass. 334, 335 (2012).[1]

a.   Police surveillance.   On an evening in March of 2016, at approximately 9 P.M., Detective Jose Torres, Jr., and Lieutenant Detective David Betz of the Chelsea police department were conducting surveillance near Bellingham Square in Chelsea. Torres reported that, in his opinion, Bellingham Square is a

---

[1] The sole witness at the hearing was Detective Jose Torres, Jr., of the Chelsea police department; the motion judge explicitly credited his testimony.

"high crime" area. In addition, in the spring of 2016, the Chelsea police department had received several complaints from citizens regarding illicit drug activity and the solicitation of sexual services near Bellingham Square.

The officers were sitting in an unmarked police vehicle and were focused particularly on a nearby multifamily apartment building. They observed the defendant standing with a woman on the sidewalk outside the building. While they watched, the defendant repeatedly entered the apartment building, remained inside for approximately thirty seconds, and then returned to the sidewalk in front of the building. On at least one of these occasions, the woman accompanied the defendant inside the building. Based on his training and experience in the narcotics unit, Torres believed that it was common for individuals engaged in street-level drug transactions to maintain the bulk of their narcotics elsewhere, so as not to have drugs on their persons if stopped, and to return to the "stash location" after a sale in order to retrieve drugs for a new sale ("re-up"). Torres believed that the defendant was engaging in this practice.

The officers saw the defendant initiate conversations with several pedestrians passing by on the sidewalk. On one occasion, a pedestrian stopped and spoke with the defendant; the two then walked around the corner, where they remained out of the officers' sight for approximately five to ten minutes.

Torres believed that the defendant had conducted a drug transaction on the side street in order to avoid being seen by anyone on the main street.

After approximately twenty minutes of observation, and having become increasingly suspicious of the defendant's behavior, the officers saw an individual, later identified as James Foster, approach the defendant, who was again standing outside the apartment building. Torres noticed that Foster was "manipulating something in his hands" as he spoke to the defendant; Torres believed that Foster was counting currency. Foster and the defendant then turned and walked around the corner, where they were no longer in view of the officers.[2] Because the officers believed a drug transaction was about to take place, they, too, rounded the corner.

When the officers pulled onto the side street, they saw the defendant and Foster standing facing one another. Torres believed that the defendant handed an item to Foster. Torres could not see the item, but thought that he had just witnessed a hand-to-hand drug transaction; therefore, he and Betz got out of their vehicle and approached the two men.

---

[2] The judge made no finding as to whether the defendant had "re-upped" before engaging with Foster, and there was no testimony from Torres to this effect. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 433 (2015).

As he approached, Torres requested that Foster remove his hands from his sweatshirt pocket. Although Foster initially was hesitant to comply, he told Torres that it was because he had a knife in his front pocket. When Torres removed the knife from Foster's sweatshirt pocket, he saw a clear bag containing a white substance, which he believed to be cocaine. Foster subsequently was arrested.

Torres then approached the defendant, who had been speaking with Betz. The defendant appeared to be upset and animated, and he was not complying with Betz's demands. Torres stated that the defendant had taken a "bladed" stance toward Betz and was pulling away from the officers.[3] This led Torres to fear for his safety, so he determined a patfrisk was necessary. The officers did not find any weapons or drugs, but they did seize a twenty dollar bill from the defendant. In Torres's experience, the amount of suspected cocaine found on Foster's person had a street value of roughly twenty dollars. The defendant was arrested.

b. The strip search. The defendant was brought to the Chelsea police station, where officers began a routine booking procedure. At some point, police suspended the booking procedure because the arresting officers believed that the

---

[3] Torres explained that a bladed stance refers to a fighting position.

defendant could have had drugs concealed on his person.[4]  More specifically, Torres testified that, in his experience, it is common for street-level drug distributors to conceal drugs in their crotch area to avoid detection.  The officers thus determined that a "more thorough search of the defendant was necessary," and decided to conduct a strip search.  Upon being told that he was to comply with the strip search, the defendant responded in a verbally animated manner and protested that the officers were "not going to do that."

Torres and Betz escorted the defendant to a nearby cell and ordered that he remove his shoes and socks, as well as his shirt, pants, and underwear.[5]  When the defendant was fully undressed, the two officers saw a red bandana and seized it from his groin area.  The bandana contained what they believed to be seven small bags of cocaine.  The officers returned the defendant's clothing, allowed him to dress, and then resumed the booking procedure.

c.  Prior proceedings.  The defendant was charged with distribution of a class B substance, G. L. c. 94C, § 32A; conspiracy to violate the drug laws, G. L. c. 94C, § 40; and

---

[4] The Commonwealth does not argue that an inventory search was conducted at any point.

[5] The record is unclear as to whether the defendant undressed himself or whether the officers removed his clothing.

possession with intent to distribute, G. L. c. 94C, § 32A (c). He moved to suppress the drugs seized, inter alia, on the ground that the drugs were obtained as a result of an unconstitutional strip search. After an evidentiary hearing, the judge found that police did not have probable cause to conduct a strip search of the defendant, and allowed his motion to suppress.[6]

The Commonwealth filed a petition pursuant to Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), seeking leave to pursue an interlocutory appeal, and a single justice of this court allowed the appeal to proceed in the Appeals Court. A divided panel of that court reversed the order allowing the motion to suppress, see Commonwealth v. Agogo, 93 Mass. App. Ct. 495, 506 (2018), and we allowed the defendant's petition for further appellate review.

2. Discussion. In reviewing a decision on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.'" Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting Commonwealth v.

_____

[6] The defendant also moved to suppress on the grounds that police lacked reasonable suspicion to justify the initial stop and frisk, and that his arrest was not supported by probable cause. The judge denied the motion on those two grounds, from which the defendant does not appeal. The sole issue before us is whether the officers had probable cause to justify conducting a strip search of the defendant.

Jimenez, 438 Mass. 213, 218 (2002). "[O]ur duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." See Commonwealth v. Bostock, 450 Mass. 616, 619 (2008), quoting Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).

a. Applicable standards. The motion judge determined that the officers had probable cause to arrest the defendant on drug charges, and that they were justified, therefore, in searching the defendant for evidence of drugs incident to that arrest. Searches incident to arrest, however, "may be unconstitutional notwithstanding the lawful arrest, because they involve inspections of such a highly personal nature, or are conducted in such a manner, as to constitute an unreasonable intrusion on an individual's privacy." Commonwealth v. Prophete, 443 Mass. 548, 555 (2005), and cases cited. Indeed, "strip or visual body cavity searches, by their very nature, are humiliating, demeaning, and terrifying experiences that, without question, constitute a substantial intrusion on one's personal privacy rights protected under the Fourth Amendment [to the United States Constitution] and art. 14 of the Massachusetts Declaration of Rights." Id. at 553. As such, "before police may command removal of an arrested person's last layer of clothing, they must have probable cause to believe . . . that they will find a weapon, contraband, or the fruits or

instrumentalities of criminal activity that they could not reasonably expect to discover without forcing the arrested person to discard all of his or her clothing" (citation omitted). Id. at 553, 556. Reasonable suspicion is not enough. Commonwealth v. Amado, 474 Mass. 147, 155 (2016).

In addition to the probable cause requirement, for a strip search to be constitutional under the United States Constitution and the Massachusetts Declaration of Rights, "such searches also must be reasonably conducted." See Morales, 462 Mass. at 342. It is undisputed that a strip search occurred here, and, because we conclude that there was no probable cause to strip search the defendant, we need not reach the question whether the strip search was reasonably conducted.

b. Probable cause. In making a probable cause determination, "as the very name implies, we deal with probabilities[,] . . . the factual and practical considerations of everyday life on which reasonable and prudent [individuals], not legal technicians, act." See Commonwealth v. Cast, 407 Mass. 891, 895-896 (1990), quoting Draper v. United States, 358 U.S. 307, 313 (1959). The factual and practical considerations known to the police at the time they concluded that a strip search was necessary here were as follows. The officers determined that the defendant had been engaging in street-level drug distribution. Based on their training and experience, they

believed that individuals engaged in street-level drug distribution may conceal drugs in the crotch area to avoid detection.  When police approached the defendant, he had taken a "bladed" stance, and he had displayed an animated demeanor.  He also had pulled away from officers prior to their decision to pat frisk him.  After the patfrisk, officers discovered the twenty dollars on the defendant's person; this amount was consistent with the street value of the suspected cocaine they found on Foster's person.  Later, at the police station, when police informed the defendant of his imminent strip search, he vocally protested.

On these facts, it is evident that the officers had, at best, a reasonable suspicion that the defendant could be concealing contraband in his crotch.  When determining whether a strip search is constitutionally permissible, however, a reasonable suspicion is not enough.  See Prophete, 443 Mass. at 553 (reasonable suspicion to initiate strip search is sufficient under Fourth Amendment, but probable cause is required under art. 14).[7]  Probable cause requires some

---

[7] A strip search is not as intrusive as a manual body cavity search, "which involves some degree of touching and probing of body cavities" and therefore requires "a strong showing of particularized need supported by a high degree of probable cause" (citations omitted).  Commonwealth v. Morales, 462 Mass. 334, 340 n.4 (2012).

affirmative indication that drugs or other contraband are being concealed in areas such as the crotch or groin.

The requisite affirmative indication that contraband or weapons are being secreted in very private parts of the body may take a number of forms, as our cases have recognized.  It may be the sight or feel of an unusual object or protrusion that supplements police suspicion of drug involvement.  See, e.g., Commonwealth v. Clermy, 421 Mass. 325, 330-331 (1995) (police suspicion supplemented when, during patfrisk, they felt hard plastic prescription drug container hidden in defendant's groin); Commonwealth v. Vick, 90 Mass. App. Ct. 622, 624-625, 630-631 (2016) (probable cause to conduct strip search where, during patfrisk, officer felt hard object in cleft of defendant's buttocks).  When a hard object or suspicious bulge is detected, it is more likely to amount to probable cause if the confluence of factors otherwise known to police at the time of the strip search confirms their belief that the object is a weapon or contraband.  See generally 2 W.R. LaFave, Search and Seizure § 3.6(b) (5th ed. 2018) ("If the package is concealed in the groin area, a finding of probable cause is much more likely.  And even if the touching does not alone supply probable cause,

it may contribute together with other facts to a probable cause finding" [footnote omitted]).[8]

The requisite affirmative indication also may be found in behaviors suggesting that the defendant is hiding something somewhere on his person that a patfrisk reasonably could not discover, absent divestiture of the arrestee's clothing. For example, such an indication may emerge when, during an ordinary search or patfrisk, the arrestee is seen notably attempting to block his or her groin, buttocks, breasts, or genital area from police view or reach. See Prophete, 443 Mass. at 554-555 (police suspicion supplemented when defendant twice used hands to protect groin area during patfrisk). See also Commonwealth v. Thomas, 429 Mass. 403, 408 (1999) (probable cause to strip search defendant after police saw his associate obtain from him two bags of cocaine, sell one bag to undercover officer, and return with one bag and money to defendant, who appeared to serve as his associate's "stash" location).

Here, there was no affirmative indication that the defendant was secreting contraband or weapons in his groin area.

_____

[8] In Commonwealth v. Amado, 474 Mass. 147, 149, 155-156 (2016), the detection of a hard object behind the defendant's testicles did not give rise to probable cause for a strip search. The police had no evidence to suggest that the defendant was involved in drug activity, and officers already knew that the object was not a weapon, thereby dispelling any safety concerns arising from an exit order and upon which the attendant patfrisk was predicated.

After finding only a twenty dollar bill on the defendant and arresting him, the officers had nothing more than a generalized suspicion that this street-level drug dealer, who likely kept a stash of drugs in the nearby apartment building, had them on his person.[9] The officers felt or saw nothing indicative of concealed contraband after searching him at the scene, and the defendant did not attempt, at any point, to block officers from reaching or viewing his groin area. There also was no evidence that the officers ever saw the defendant place anything in his crotch, reach for his crotch, or walk in a manner consistent with there being an object concealed in his crotch.

The officer's training and experience as to the general practices of street-level drug dealers do not constitute the requisite particularized indication of concealment. Cf. Amado, 474 Mass. at 155 (suspicion of contraband based on police experience and training insufficient). Likewise, the defendant's behavior justifying the patfrisk at the scene (taking a bladed stance) is too attenuated in relation to the later strip search that occurred at the police station. There, the defendant's animated vocal displeasure at the prospect of being subjected to a strip search is not the type of behavior we

---

[9] Where police believed that a sale to Foster had just been consummated, there would be no likely reason why the defendant would continue to have had drugs on his person if he only retrieved enough from a stash for each sale.

have recognized as affirmatively indicative of concealment. Were it otherwise, the risk is that such a reaction to being told of an imminent strip search readily could be induced, and then used to justify the search.  See Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981) (police cannot "turn a hunch into a reasonable suspicion by inducing the conduct justifying the suspicion").  Cf. Commonwealth v. Alexis, 481 Mass. 91, 99-100 (2018) (police cannot justify warrantless search of home by inducing exigency).  To permit such a search in these circumstances, absent an affirmative indication of concealment, would be to authorize an inherently degrading strip search whenever an ordinary search of a suspected drug dealer does not yield evidence of the contraband police seek.  We are constrained by art. 14 from doing so.  See Amado, 474 Mass. at 155.

3.  Conclusion.  While we are mindful that a strip search may, at times, be necessary to effectuate the legitimate ends of law enforcement or to protect public safety, on the facts found by the motion judge, the police lacked probable cause to conduct a strip search of this defendant.

Order allowing motion
to suppress affirmed.