NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12630

COMMONWEALTH  vs.  STANLEY JEANNIS.


Suffolk.     February 5, 2019. - May 24, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Controlled Substances.  Practice, Criminal, Motion to suppress.
    Search and Seizure, Probable cause, Bodily intrusion, Body
    examination.  Constitutional Law, Search and seizure,
    Probable cause.  Probable Cause.



    Indictments found and returned in the Superior Court
Department on June 11, 2015.

    A pretrial motion to suppress evidence was heard by Robert
N. Tochka, J., and the cases were tried before Raffi N.
Yessayan, J.

    After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


    Ian MacLean, Assistant District Attorney, for the
Commonwealth.
    Jane Larmon White for the defendant.


    GANTS, C.J.  During a lawful strip search of the defendant

following his arrest, police officers observed a plastic bag

protruding from the cleft between his buttocks and caused him to remove it; it was revealed to contain individually wrapped plastic bags of both heroin and cocaine. The issue presented in this case is whether the removal of the plastic bag was within the scope of the strip search, which requires only probable cause, or whether the officers conducted a manual body cavity search of the defendant's rectum, which requires the issuance by a judge of a search warrant based on "a strong showing of particularized need supported by a high degree of probable cause." Rodriques v. Furtado, 410 Mass. 878, 888 (1991). We conclude that, under the circumstances here, the removal of the plastic bag was within the scope of the strip search and that the actions taken by the police were reasonable within the bounds of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. We therefore affirm the denial of the defendant's motion to suppress the drug evidence. We also affirm his convictions.

Background. We summarize the facts as found by the judge who heard the defendant's motion to suppress, supplemented by uncontradicted witness testimony that the judge implicitly credited. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

On April 7, 2015, members of a Federal Bureau of Investigation task force arrested the defendant in a hotel room

in Revere on outstanding warrants. After the defendant was arrested, Lieutenant David Callahan of the Revere police department arrived at the hotel and brought the defendant to the Revere police station for booking. At the station, the defendant complained to Callahan that he had swallowed "fifties," which Callahan understood to mean small bags worth approximately fifty dollars of heroin or cocaine, and that he did not feel well. Callahan did not believe that the defendant was under the influence of narcotics and thought that he was feigning illness, but nonetheless followed established protocol and requested medical assistance.

Callahan observed the defendant as he sat on a bench during the booking procedure, and noticed that the defendant "sat oddly, leaning to one side." When the defendant told Callahan he might vomit, Callahan, accompanied by Revere police Officer Joseph Singer, escorted the defendant to a nearby cell with a sink and toilet, which was out of sight from other prisoners and not clearly visible to booking officers. As the defendant -- who was approximately six feet, two inches tall and weighed approximately 275 pounds at the time of the arrest -- walked to the holding cell, Callahan observed that he was not walking normally. Even though the defendant was not restrained in shackles or handcuffs, his movement was slow, rigid, and tense. Callahan saw the defendant "clenching his buttocks area," and

believed that the defendant might have "something secreted in his lower half," which Callahan recognized could pose a safety risk to the defendant, the police officers, and other prisoners.

Once inside the holding cell, Callahan ordered the defendant to remove his clothing. The defendant removed his shirt, pants, and socks, but became argumentative when he was asked to remove his underwear. While still wearing his underwear, he continued to clench his buttocks area and attempted to shield his backside from the view of Callahan and Singer. Concerned that he was taking a "fighting stance" or possibly hiding a weapon, the officers handcuffed one of the defendant's arms, and Singer restrained the other arm.

The defendant pulled down the waistband of his underwear and told the officers, in substance, "See, I don't have anything." But when he did so, Singer noticed a plastic bag protruding from the defendant's buttocks. He asked the defendant to remove the bag and the defendant stated, "I will get it for you if you don't charge me." Singer then ordered the defendant to remove the bag, and told the defendant that he would remove it himself if the defendant refused to do so. The defendant complied and, with Singer's hand on top of the defendant's hand, the defendant pulled down his underwear and removed the bag from his buttocks area. It contained fifteen

individually wrapped bags of cocaine and thirteen individually wrapped bags of heroin.

After a grand jury indicted the defendant on charges of possession of cocaine and heroin with intent to distribute, as subsequent offenses, the defendant moved to suppress the drugs that were found in the plastic bag that was removed during the strip search.  Following an evidentiary hearing, a Superior Court judge denied the motion.  The judge concluded that there was probable cause to believe that the defendant was attempting to conceal contraband "in a private area of his body," so a strip search was "proper."  The judge also concluded that "[t]he strip search did not cross over to a cavity search," noting that the defendant removed the bag himself after Singer ordered him to do so.  A Superior Court jury convicted the defendant on the lesser included counts of simple possession of both cocaine and heroin.  The defendant timely appealed, challenging the lawfulness of the search.

The Appeals Court concluded that the defendant's motion to suppress should have been allowed, and vacated the defendant's convictions.  Commonwealth v. Jeannis, 93 Mass. App. Ct. 856, 862-863 (2018).  The court determined that the Commonwealth failed to meet its "burden to provide evidence from which the judge could find that no portion of the bag was within the defendant's rectum."  Id. at 859.  Because the item was

presumptively "seiz[ed] from within a body cavity," id. at 861, the court concluded that the heightened constitutional requirements to perform a manual body cavity search must apply in these circumstances. Although the court concluded that "there was heightened probable cause to believe that the bag protruding from the defendant's rectum contained contraband," it nonetheless held that the drugs found in the bag should have been suppressed because the bag "was seized without a judicial warrant in circumstances that do not justify failure to obtain one." Id. at 862. We granted the Commonwealth's application for further appellate review.

Discussion. We credit the motion judge's subsidiary findings of fact, but we review de novo his legal conclusion that the strip search of the defendant did not cross the line into a manual body cavity search. See Commonwealth v. Thomas, 429 Mass. 403, 405 (1999). See also Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004) (appellate courts "independently determine the correctness of the [motion] judge's application of constitutional principles to the facts as found"). To conduct that analysis, we must first review the constitutional principles that apply to strip searches, visual body cavity searches, and manual body cavity searches.

1. Strip searches, visual body cavity searches, and manual body cavity searches. A strip search occurs when "the last

layer of clothing of a detainee [is] removed," or "when a detainee remains partially clothed, but . . . a last layer of clothing is moved (and not necessarily removed) in such a manner whereby an intimate area of the detainee is viewed, exposed, or displayed."  Commonwealth v. Morales, 462 Mass. 334, 342 (2012). A visual body cavity search occurs when a strip search "extends to a visual inspection of the anal and genital areas."  Thomas, 429 Mass. at 407 n.4.

"[S]trip or visual body cavity searches, by their very nature, are humiliating, demeaning, and terrifying experiences that, without question, constitute a substantial intrusion on one's personal privacy rights protected under the Fourth Amendment and art. 14."  Commonwealth v. Prophete, 443 Mass. 548, 553 (2005), citing Thomas, 429 Mass. at 408-409 & n.5.  Yet we recognize "that such searches are, in some cases, necessary to serve legitimate ends of law enforcement."  Prophete, supra.

The same constitutional standards apply to both strip searches and visual body cavity searches.  Thomas, 429 Mass. at 408.  We permit law enforcement officers to conduct such intrusive searches only where they have probable cause to believe that the defendant had concealed drugs, a weapon, contraband, or evidence of a crime on his or her person or clothing in a place where it would not be discovered by a traditional search of the person -- that is, in a place where

the police reasonably could not expect to discover it without exposing or inspecting an intimate area of the defendant's body. See Morales, 462 Mass. at 339, quoting Prophete, 443 Mass. at 554 ("A search of a defendant 'lawfully could progressively extend into a strip [or a visual body cavity] search only if such a search was justified by probable cause to believe that the defendant had concealed [drugs] on his person or his clothing that would not otherwise be discovered by the usual search incident to arrest'").  See also Commonwealth v. Agogo, 481 Mass. 633, 637 (2019).

We also require that such a search be "reasonably conducted," considering the need for the search, the manner and place in which it is conducted, and the scope of the intrusion. Morales, 462 Mass. at 342.  See Agogo, 481 Mass. at 638.  "At all times the potential harm to a detainee's health and dignity should be taken into account in assessing the reasonableness of the intrusion."  Morales, supra at 343.  "To preserve the privacy of the person being searched to the utmost extent, police should conduct strip and visual body cavity searches in private rooms whenever possible."  Thomas, 429 Mass. at 409 n.5.  "In addition, the searches should always be done where no one, other than the investigating officer or officers, can see the person being searched."  Id.

A manual body cavity search occurs where there is touching, probing, or manipulation of a body cavity, such as the anal or vaginal cavities. See Commonwealth v. Vick, 90 Mass. App. Ct. 622, 629 (2016). See also Thomas, 429 Mass. at 408. See generally Simonitsch, Visual Body Cavity Searches Incident to Arrest: Validity Under the Fourth Amendment, 54 U. Miami L. Rev. 665, 668 (2000) ("[M]anual body cavity searches, also known as physical body cavity searches, include . . . those performed by insertion of, or manipulation with, the fingers, [and] also endoscopic examinations, and the use of gynecological devices" [footnote omitted]).

Because "[i]t is difficult to imagine a more intrusive, humiliating, and demeaning search than the one conducted inside [a person's] body," Rodriques, 410 Mass. at 888, and because this type of search may pose an inherent threat to a person's health and safety, law enforcement officers may conduct such a search only where they first obtain a warrant "issued by the authority of a judge, on a strong showing of particularized need supported by a high degree of probable cause." Id. As with any other constitutional search, the presence of exigent circumstances may excuse the failure to obtain a warrant, but it will not excuse the need for a strong showing of particularized need supported by a high degree of probable cause. See Morales, 462 Mass. at 343-344.

2. Bag protruding from the cleft between the buttocks.

Where, as here, a strip search reveals that a plastic bag is protruding from the cleft between a defendant's buttocks, the police must determine whether removal of the bag is part of the strip search, which requires probable cause but not a search warrant, or constitutes a manual body cavity search, which in the absence of exigency requires a search warrant issued by a judge. The Appeals Court concluded that the police in these circumstances were required to apply for a search warrant to remove the bag because they had failed to ascertain that "no portion of the bag was within the defendant's rectum."[1] Jeannis, 93 Mass. App. Ct. at 859.

We agree with the Appeals Court that police officers, if they have probable cause, may conduct a visual body cavity search to learn more about the precise location of a protruding bag and that, if they determine through that visual search that the bag is solely within the intergluteal cleft of the

---

[1] The "anus" is "[t]he very end -- the last inch or so -- of the digestive canal, more specifically of the rectum." 1 J.E. Schmidt, Attorneys' Dictionary of Medicine and Word Finder, at A-273 (1986). The opening of the anus leads to the groove between the buttocks. Id. The "rectum" is "[t]he last five or six inches of the colon (large intestine, large bowel) . . . opening to the outside (in the groove between the buttocks) through the anus." 3 J.E. Schmidt, Attorneys' Dictionary of Medicine and Word Finder, at R-31 (1988).

defendant's buttocks[2] and has not entered the anus, they may remove the bag based on the same probable cause that justified the visual body cavity search.  But we do not agree that a search warrant for a manual body cavity search is always required to remove a plastic bag where the police did not or could not ascertain that the bag is located completely outside of the rectum -- that is, where it did not to any degree penetrate the anus.  Rather, we conclude that a search is a strip or visual body cavity search, not a manual body cavity search, where there is "no touching or probing or otherwise opening or manipulating of the defendant's anal cavity, and the bag of drugs was easily removed without in any way endangering the defendant's health or safety."  Vick, 90 Mass. App. Ct. at 629.

This means that, where police officers are uncertain whether the bag has penetrated the defendant's anus, they have two alternatives.  First, where they have probable cause to do so, they may conduct a visual body cavity search to determine whether the bag has penetrated the defendant's anus.  If it has

---

[2] The "buttocks" are "[t]he fleshy prominences in the back of the hips upon which the trunk rests when the body is in a sitting posture."  1 J.E. Schmidt, Attorneys' Dictionary of Medicine and Word Finder, supra at B-132.  The "intergluteal cleft" is the "split, fissure, or crack" in the area between the buttocks.  Id. at C-190.  2 J.E. Schmidt, Attorneys' Dictionary of Medicine and Word Finder, at I-80 (1988).

not, they may remove the bag without a search warrant. Second, where the bag has penetrated the anus or where the police officers have not ascertained through a visual body cavity search whether it has, they may determine whether the bag can be safely removed without any touching, probing, or manipulation of the rectum. See id. If it can be safely removed and if there is no touching, probing, or manipulation of the rectum, the removal of the bag is not a manual body cavity search. See id. However, if the bag cannot be safely removed without any touching, probing, or manipulation of the rectum or if there is uncertainty whether it can be, the officers must apply for a search warrant for a manual body cavity search, unless exigent circumstances justify proceeding without a warrant. See id. at 628-629.

Pragmatically, a police officer may determine whether the bag can be safely removed without any touching, probing, or manipulation of the rectum by gently flicking the bag with his or her fingers, applying no significant pulling force on the bag. If that suffices to remove the bag without any resistance, we do not consider the search to be a manual body cavity search. See id. at 625, 629. A gentle flick to remove a plastic bag protruding from the cleft of a defendant's buttocks may in some circumstances be safer and less intrusive than a visual body cavity search intended to determine whether the bag has

penetrated the defendant's anus.  It is easy to envision a defendant resisting an intrusive and embarrassing visual body cavity search, risking injury to both the defendant and the police officers attempting to restrain the defendant.  And a gentle flick may be less intrusive than a visual inspection because a police officer attempting to conduct the inspection might need to place his or her fingers so close to the anus that he or she might come close to a touching or probing that would constitute a manual body cavity search.

If there is any resistance to the gentle flick, indicating that the bag is in any way lodged or embedded within the body cavity, then the police must release the bag and apply for a search warrant for a manual body cavity search, unless there are exigent circumstances.  We recognize the health risk that may arise if a police officer were to continue to pull on the bag where there is any resistance.  In United States v. Fowlkes, 804 F.3d 954, 959-960 (9th Cir. 2015), a police officer continued to pull on a bag protruding from the defendant's rectum after encountering resistance in what was described as "a difficult, abrasive procedure," where the plastic bag "went from a dime size . . . to somewhat near a golf ball size as it was taken out," and was "covered in blood."  The requirement of a search warrant for a manual body cavity search is intended not only to ensure that a judge determines whether there is a strong showing

of particularized need supported by a high degree of probable cause, Rodriques, 410 Mass. at 888, but also to ensure that any such search is conducted in a safe, reasonable manner under sanitary conditions by a trained medical professional.  See Fowlkes, supra at 967 (warrantless forcible seizure of plastic bag protruding from defendant's rectum was unreasonable under Fourth Amendment where item of unknown size was removed from rectum by nonmedical personnel who "did nothing to assure that the removal was safe and performed under sanitary conditions").

3.  Application of legal principles to removal of plastic bag here.  The defendant on appeal argues that the removal of the plastic bag that protruded from the cleft of his buttocks constituted a manual body cavity search, and that the officers failed to obtain the necessary judicial warrant before removing the bag.  The Commonwealth, in turn, contends that the strip search never became a manual body cavity search and thus did not require a warrant.  Because we conclude that the Commonwealth is correct, we do not reach the other issue the parties raise -- whether exigent circumstances justified an exception to the warrant requirement.

The judge's findings indicate only that the plastic bag that contained the drugs protruded from the defendant's "buttocks"; the judge did not find whether any part of the plastic bag was in the defendant's rectum, and the evidence on

that point is not so clear that we can infer that the judge implicitly found that the bag did not penetrate into the rectum where he concluded that "[t]he strip search did not cross over to a cavity search."  Therefore, because the burden rests with the Commonwealth on a motion to suppress to justify a warrantless search, Commonwealth v. Antobenedetto, 366 Mass. 51, 57 (1974), and because the Commonwealth did not prove that the plastic bag did not to some degree penetrate the defendant's anus, we must assume for the sake of this motion that the plastic bag did penetrate into the rectum.[3]  But in contrast to what the defendant suggests, our task does not end there. Instead, we must determine whether the removal of the bag was conducted in a manner permissible for a strip search -- that is, whether the removal of the bag met with any resistance that suggested that it was lodged or embedded in the victim's rectum.

---

[3] The parties dispute the relevance of certain medical records that were admitted in evidence at (or following) the motion to suppress hearing.  These records, produced by the ambulatory service that brought the defendant to a hospital from the Revere police station, contain a note stating:  "PER REVERE [POLICE DEPARTMENT] [PATIENT] HAS BEEN ARRESTED, HAD BEEN FOUND TO HAVE BAGS OF TIGHTLY WRAPPED CRACK COCAINE AND HEROIN (SEPARATELY) HIDDEN IN HIS RECTUM."  The defendant argues that these records confirm that the police knew or believed that the bag was located partly within the defendant's rectum.  But as discussed supra, with no factual findings to the contrary, we must already make that assumption for the purpose of deciding this appeal.

Although the judge's findings on this factual issue are not as clear as we would prefer, we see no need to remand the case. There is nothing in the judge's findings to suggest that the bag required more than minimal force to remove, and we therefore conclude that the judge implicitly found that the bag was safely removed without any touching, probing, or manipulation of the rectum. The judge found that Singer's hand was on top of the defendant's hand while the defendant pulled out the bag, and the defendant in his testimony said that "with my free hand I just retrieved it."[4] The size of the 275 pound defendant compared to the small plastic bag at issue -- a photograph of which was admitted in evidence -- supported the finding that the bag, which was apparently visible outside the intergluteal cleft as soon as the defendant pulled down his waistband, did not extend so far down as to be lodged or embedded in his rectum. Although we cannot know with certainty on this record whether any part of the bag was inside the rectum, the facts as found support the conclusion that the bag was not lodged or embedded in the defendant's rectum but was easily removed, and therefore the defendant's rectum did not need to be "manipulated" in order to

---

[4] The defendant testified that Singer had put his fingers up the defendant's rectum and "probably pulled [the plastic bag] out half way" before the defendant removed it himself, but the judge did not credit the defendant's testimony regarding Singer's conduct.

retrieve the bag. Consequently, a search warrant issued by a judge was not required.

In reaching this conclusion, we give no weight to the fact that the defendant removed the bag himself, with Singer's hand over his. The defendant pulled out the bag after a direct order from Singer to do so; he did not consent to do so voluntarily. See Commonwealth v. Carr, 458 Mass. 295, 302 (2010) ("The Commonwealth must prove consent unfettered by coercion, express or implied, and also something more than mere acquiescence to a claim of lawful authority" [quotations and citation omitted]). See also George v. Edholm, 752 F.3d 1206, 1215 (9th Cir. 2014) ("Police officers may not avoid the requirements of the Fourth Amendment by inducing, coercing, promoting, or encouraging private parties to perform searches they would not otherwise perform"). Therefore, we assess the lawfulness of the officer's conduct as if he alone had pulled out the plastic bag.

Lastly, we recognize that the defendant has identified at least two States where appellate courts have ruled that the removal of any item protruding from a suspect's rectum was a manual body cavity search that required a search warrant. In People v. Hall, 10 N.Y.3d 303, 311, cert. denied, 555 U.S. 938 (2008), the Court of Appeals of New York concluded that "the removal of an object protruding from a body cavity, regardless of whether any insertion into the body cavity is necessary . . .

cannot be accomplished without a warrant" unless exigent circumstances exist. In State v. Barnes, 215 Ariz. 279, 281 (Ct. App. 2007), a panel of the Court of Appeals of Arizona declared that "an officer must secure a warrant to remove items partially protruding from an arrestee's rectum." However, when one examines the facts of those cases, they are consistent with our conclusion that a warrant is required where items are lodged or embedded within the rectum, such that the items would require manipulation of the rectum to dislodge. In Hall, supra at 306, the police officers "observed a string . . . hanging out of defendant's rectum," and, "[b]elieving that the string was attached to a package . . . hidden inside defendant's body," one officer held the defendant while the other "pulled on the string and removed a plastic bag that was found to contain crack cocaine." Similarly, in Barnes, supra at 280-281, the officer "grabbed a hold" of "something protruding out of [the defendant's] anus," and the court declared that "the officer's manipulation and removal of the protruding portion of the bag necessarily exerted force on the portion of the bag extending into [the defendant's] rectum." Here, in contrast, where the Commonwealth met its burden of showing that the protruding plastic bag was not lodged or embedded in the defendant's rectum and that its removal did not cause any manipulation of the

rectum, the same constitutional concerns do not arise. Accordingly, the motion to suppress was properly denied.

Conclusion.  The order of the Superior Court judge denying the defendant's motion to suppress is affirmed.  The judgments of conviction are also affirmed.

So ordered.