NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-2

COMMONWEALTH

vs.

DAQUAN SPARKS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The Commonwealth appeals from an order of a Superior Court judge suppressing cocaine that police found in the defendant's underpants.  The Commonwealth argues that the search was permissible because, while executing a search warrant of the defendant's person for cocaine, police saw a plastic baggie protruding from his underpants, and then directed the defendant to remove the baggie, which contained cocaine.  We affirm.

Background.  Boston police obtained a warrant to search the person of the defendant for items including cocaine.[1]  The warrant application was supported by an affidavit of Detective Timothy Murray describing three controlled buys by a

_____

[1] Police also obtained a search warrant, apparently based on the same affidavit, to search the defendant's apartment.  No issue pertaining to that warrant is before us.

confidential informant (CI), as to each of which the CI told police that the CI bought from the defendant a substance later identified as cocaine. The affiant opined, based on his training and experience, that "drug dealers often keep smaller quantities of drugs on their person[s] ready for sale" and that the defendant "is using his person as a means to conceal, possess, and distribute crack cocaine." However, the affidavit did not relate any information that the defendant secreted drugs in his underpants. Police executed the search warrant and found in the defendant's underpants a plastic baggie of cocaine.[2]

The defendant moved to suppress, arguing that police improperly strip searched him. At a hearing on the motion, Murray testified that to execute the search warrant, police encountered the defendant outside his apartment building, showed him the warrant, and escorted him to his apartment to conduct the search privately. Murray testified that, in compliance with the verbal order of Detective Timothy Stanton, the defendant removed his own clothing until he was wearing only his underpants. According to Murray, at that point the defendant's private parts were not visible, but Murray could see "a bulge" near the defendant's groin and part of a plastic baggie sticking

---

[2] From a backpack the defendant was carrying, police seized another baggie of cocaine. The judge declined to suppress that cocaine, and no issue pertaining to its seizure is before us.

2

out from the side of his underpants. At Stanton's request, the defendant reached into his underpants, retrieved the baggie, and turned it over to police; it contained cocaine. Questioned as to whether police continued to search the defendant after they seized the baggie, Murray replied, "[I]t's my common practice . . . to remove the underwear, but I don't have a memory if we did that or not."

The defendant testified at the motion hearing. In contrast to the police version of events, he said that he was wearing boxer shorts that were loose around his leg and groin area, and when he was clad in only the boxer shorts the baggie was well hidden between his buttocks close to his anus and not visible to police. The defendant testified that Stanton spoke aggressively and pulled down the defendant's jogger pants and boxer shorts.[3]

The judge allowed the motion to suppress the cocaine found in the defendant's underpants. The judge found that "Stanton or [the defendant]" took off the defendant's pants and "partially took off his underwear/boxers to remove the narcotics." Because Murray testified that he did not remember whether the defendant's underpants were removed, the judge credited the defendant's testimony that they were removed. The judge further

---

[3] The defendant also testified that Stanton reached barehanded between the defendant's buttocks and pulled out the baggie. The judge did not credit that testimony, and so we do not consider it.

found that removal or partial removal of the underpants exposed an intimate area. The judge concluded that "there was no probable cause to lead the officers to believe that [the defendant] was concealing drugs in his private area or inside his buttocks," and ruled that the police impermissibly conducted a strip search and a visual body cavity search.

The Commonwealth moved to reconsider, arguing that the judge's findings did not make clear whether she credited Murray's testimony that when the defendant was clad in only his underpants the baggie was visible, or the defendant's testimony that he was wearing loose-fitting boxer shorts and the baggie was not visible. The judge denied the motion to reconsider, stating in part, "My findings of fact in my decision [are] clear that [the defendant's] underwear was partially removed during the search, before the discovery of drugs." The Commonwealth appeals.

Discussion. "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of h[er] ultimate findings and conclusions of law" (quotations and citations omitted). Commonwealth v. Agogo, 481 Mass. 633, 636 (2019). In addition to the facts found by the judge, we may

consider facts gleaned from documentary evidence and from uncontroverted testimony.[4]  See id. at 633-634.

A strip search does not mean simply "inspection of a naked individual"; it also includes circumstances when the individual "remains partially clothed," and the "last layer of clothing is moved (and not necessarily removed)" so that "an intimate area" is "viewed, exposed, or displayed" (citations omitted). Commonwealth v. Vick, 90 Mass. App. Ct. 622, 628 (2016).  See Commonwealth v. Morales, 462 Mass. 334, 341-342 (2012) (strip search occurred where officer moved waistband of arrestee's shorts, exposing buttocks).  A visual body cavity search is defined as a "visual inspection of the anal and genital areas." Commonwealth v. Thomas, 429 Mass. 403, 407 n.4 (1999).  Both strip searches and visual body cavity searches are "substantial intrusion[s] on one's personal privacy rights protected under the Fourth Amendment and art. 14 of the Massachusetts Declaration of Rights."  Commonwealth v. Prophete, 443 Mass. 548, 553 (2005).  To conduct such an intrusive search, police must have probable cause to believe that a defendant is

_____

[4] To the extent that the judge found that she credited the testimony of Murray except as to certain testimony that conflicted with that of the defendant, and further that she credited the testimony of the defendant except as to certain testimony that conflicted with that of Murray, those findings were unnecessary, because an appellate court may credit uncontroverted testimony.  See Agogo, 481 Mass. at 633-634.

5

concealing contraband "in a place where it would not be discovered by a traditional search of the person -- that is, in a place where the police reasonably could not expect to discover it without exposing or inspecting an intimate area of the defendant's body." Commonwealth v. Jeannis, 482 Mass. 355, 358-359 (2019).

1. Plain view. The Commonwealth contends that before the defendant's underpants were disturbed, police saw the baggie protruding from them, and thus had probable cause to strip search him. The Commonwealth argues that because Murray's testimony about his lack of memory whether the underpants were removed pertained to the period after police found the baggie, the judge impermissibly considered it as discrediting Murray's testimony about seeing the baggie protruding from the underpants. We are not persuaded.

In her initial decision, the judge found that "Stanton or [the defendant] partially took off [the defendant's] underwear/boxers to remove the narcotics," and "an intimate area was exposed." In her ruling on the motion to reconsider, the judge clarified the sequence of events, finding that the defendant's underpants were "partially removed during the search, before the discovery of drugs." We are obligated to defer to the judge's findings of fact based on the credibility of the testimony of witnesses, see Commonwealth v. Gonzalez, 93

6

Mass. App. Ct. 6, 11 (2018), and on inferences "derived reasonably from the testimony" (citation omitted), Commonwealth v. Gonzalez, 487 Mass. 661, 668 (2021). In weighing the credibility of the defendant's testimony that the baggie was not visible to police until Stanton pulled down the defendant's underpants, the judge could consider Murray's lack of memory about whether the defendant's underpants were removed at any point, as well as the defendant's contrasting testimony.

Based on her finding that police did not see the baggie until after the defendant's underpants were partially removed, the judge concluded that police impermissibly conducted a strip search and visual body cavity search. On the record before us, we discern no error in this determination. See Agogo, 481 Mass. at 638 (based on defendant's engaging in street-level drug transactions and detective's opinion that individuals who do so commonly conceal drugs in their crotch areas, police had "at best, a reasonable suspicion" for strip search). Contrast Jeannis, 482 Mass. at 355-358, 363 (based on arrestee's telling police he had swallowed narcotics, leaning to one side while sitting, clenching buttocks, and shielding his backside from view, police had probable cause to conduct strip and visual body cavity searches for contraband).

2. Search pursuant to warrant. In the alternative, the Commonwealth argues that because the police had a warrant to

7

search the defendant's person for cocaine, they could permissibly search anywhere on his person "reasonably capable of containing" cocaine.  We are not persuaded.

As mentioned above, and as the judge noted, the search warrant affidavit did not establish probable cause that the defendant was secreting cocaine in his underpants.  It did not state that the CI told police any such information.  To the extent that it set forth the affiant's opinion, based on his training and experience, that the defendant was concealing cocaine on his person, there was no assertion that the cocaine was in his underpants.[5]

Absent information in the affidavit establishing probable cause that there was contraband in the defendant's underpants or other facts from which such a conclusion could be reasonably inferred, the search warrant for the defendant's person did not permit police to conduct a strip search or visual body cavity search, as they did here.  See Agogo, 481 Mass. at 638.  Cf. Commonwealth v. Cintron, 103 Mass. App. Ct. 799, 802 (2024) ("Even where the warrant authorizes the search of any person

_____

[5] Even if the affiant had asserted his opinion that the defendant was concealing cocaine in his underpants, such an opinion would not suffice to show probable cause for a strip search.  See Agogo, 481 Mass. at 638.  Cf. Commonwealth v. White, 475 Mass. 583, 589-590 (2016) (officer's opinion that coventurers communicate with cell phones not sufficient to establish probable cause to search).

8

present, the police must limit such searches to those within the scope of the probable cause").  Under these circumstances, the police exceeded the scope of the search warrant for the defendant's person, so suppression was proper.  See Jeannis, 482 Mass. at 361.

Order entered March 17, 2023, allowing motion to suppress, affirmed.

Order entered July 12, 2023, denying motion for reconsideration, affirmed.

By the Court (Blake, C.J., Neyman & Grant, JJ.[6]),

Clerk

Entered:  February 5, 2025.

---

[6] The panelists are listed in order of seniority.

9